**UNITED STATES, Appellant,**

v.

**Larry TAYLOR, Appellee.**

**No. 12–CO–5.**

District of Columbia Court of Appeals.

Argued April 24, 2012.
Decided Aug. 9, 2012.

David B. Goodhand, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time, and Mary B. McCord and Allen T. O'Rourke, Assistant United States Attorney, were on the brief, for appellant.

Jonathan C. Dailey, for appellee.

Before WASHINGTON, Chief Judge, and FISHER and EASTERLY, Associate Judges.

FISHER, Associate Judge:

The United States appeals from the trial court's order suppressing a handgun and ammunition discovered during a police search of a truck driven by appellee Larry Taylor. Concluding that the police did not have reason to believe that evidence of the offense of arrest would be discovered in the vehicle, *see Arizona v. Gant*, 556 U.S. 332, 343, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), we affirm.

## I. Factual and Procedural Background

On December 17, 2010, on New York Avenue, appellee Larry Taylor rear-ended an SUV occupied by three Deputy United States Marshals. Deputy Mark Beard approached Mr. Taylor, who had already alighted from the pickup truck he had been driving, and asked for his insurance information. Appellee returned to his truck and searched "for a while" for his insurance card. He then handed his card to Deputy Beard, who noticed that it had expired. While they were talking, Mr. Taylor suddenly indicated that he had to use the bathroom and urinated on a nearby tree. Based on this behavior, as well as the smell of alcohol on Mr. Taylor's breath and his unusual swaying back and forth, Deputy Beard suspected that appellee had been drinking. One of the other deputies called the police.

Metropolitan Police Department Officers Jeffrey Weber and Gunther Hashida arrived on the scene shortly thereafter. After speaking with Mr. Taylor, Officer Weber concluded that he was intoxicated based on his slurred speech, his swaying from side to side, the odor of alcohol coming from his person, the way he fumbled with his wallet while searching for his driver's license, and his statement that he had consumed two beers at his sister's house about two hours earlier. Officer Weber then administered one of the standard field sobriety tests, which appellee failed.[1] A roadside breath test, to which appellee consented, indicated that his blood alcohol content was .161. The police arrested Mr. Taylor for driving under the influence,

placed him in handcuffs, and walked him over to the patrol car for transport.

Following the arrest, Officer Hashida searched the passenger compartment of appellee's truck, looking for a current insurance card and evidence of alcohol consumption. During that search, Officer Hashida unlocked the glove box, where he found a loaded handgun.

A grand jury indicted Mr. Taylor for carrying a pistol without a license,[2] possession of an unregistered firearm,[3] and unlawful possession of ammunition.[4] Mr. Taylor moved to suppress the handgun and ammunition as the fruits of an unlawful search. At the suppression hearing on November 29, 2011, the government responded that the firearm and ammunition were admissible because they had been seized during a lawful search incident to arrest. The prosecutor relied upon *Arizona v. Gant*, which permits a search of the passenger compartment if it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 343, 129 S.Ct. 1710 (citation omitted).

According to the government, it was reasonable for the police to believe they would find evidence of drinking in the vehicle because, in this case, there were "more facts than just any DUI." In addition, Mr. Taylor had known that the police were on their way and had had the time and opportunity to hide evidence while he was searching for his insurance card. Based on his experience with "numerous DUI investigations," Officer Weber testified that "typically someone who is driving under the influence also has an open container of alcohol or multiple containers of

---

1. Officer Weber did not administer the other standard field sobriety tests because of the icy conditions on the ground.

2. D.C.Code § 22–4504(a) (2001).

3. D.C.Code § 7–2502.01 (2008).

4. D.C.Code § 7–2506.01(3) (2008).

alcohol in their vehicle." In other cases, he had found alcohol "in the glove box, underneath seats ... [and] in the map compartments along side the doors." At the end of the testimony, the government argued that "when you have a person who is visibly intoxicated driving a car," it is reasonable to believe "that there may be evidence of that intoxication ... in the car somewhere."

On December 5, 2011, the trial court granted appellee's motion to suppress. Although the court found the officers' testimony "credible" and sufficient "to provide probable cause for the arrest for DUI," it held that the evidence was insufficient to establish a reasonable belief "that there may have been evidence of the crime of Driving Under the Influence in the vehicle at the time of the search." Describing the government's evidence as going to "the nature of the crime itself," the court concluded that allowing searches based on this kind of generalized evidence, including officer testimony about the presence of open containers in other cases, would result in a *per se* rule in which arrests for certain offenses would automatically provide the police with authority to conduct a vehicle search. Rejecting this approach, the court ruled that, to pass muster under *Gant,* a search must be based on *"articulable facts* leading to a reasonable belief that evidence of the crime of arrest may be in the car in the specific case." The court then held that the government had failed to meet this burden. This appeal by the government followed. *See* D.C.Code § 23–104(a)(1) (2001) (government right to appeal a pre-trial order suppressing evidence).

## II. Analysis

### A. Legal Principles and Standard of Review

The trial court's interpretation of *Gant's* "reasonable to believe" standard, and its further determination that that standard was not met, are conclusions of law which this court reviews *de novo. Joseph v. United States,* 926 A.2d 1156, 1160 (D.C.2007) ("The court's legal conclusions on Fourth Amendment issues ... are 'subject to *de novo* review.'" (quoting *Brown v. United States,* 590 A.2d 1008, 1020 (D.C. 1991))). When conducting our review, however, "[w]e must defer to the court's findings of evidentiary fact and view those facts and the reasonable inferences therefrom in the light most favorable to sustaining the ruling below." *Id.*

"A search conducted without a warrant is 'per se unreasonable' under the Fourth Amendment unless it falls within a few specific and well-established exceptions." *Basnueva v. United States,* 874 A.2d 363, 369 (D.C.2005) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). One such exception is a search incident to a lawful arrest. *Punch v. United States,* 377 A.2d 1353, 1357 (D.C.1977) (citing *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)).

In *Arizona v. Gant,* the Supreme Court reshaped the law governing searches of an automobile incident to arrest. 556 U.S. at 332, 129 S.Ct. 1710; *see United States v. Vinton,* 594 F.3d 14, 24 (D.C.Cir.2010). For years, this exception had been widely understood to authorize a search of a vehicle "incident to every arrest of a recent occupant." *Gant,* 556 U.S. at 343, 129 S.Ct. 1710 (citing *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). But, according to the *Gant* majority, this broad interpretation of the Court's precedents had "untether[ed] the rule from the justifications underlying the *Chimel* exception"—"protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might

conceal or destroy"—and led to the view that such searches were "a police entitlement rather than an exception." *Id.* at 339, 342, 343, 129 S.Ct. 1710. Rejecting this interpretation, *Gant* restricted automobile searches under the *Chimel* rationale to those situations in which "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343, 129 S.Ct. 1710.

■ However, *Gant* also recognized a new justification for searches of automobiles incident to arrest—one that "does not follow from *Chimel.*" *Id.* Under this second rationale, a search is constitutional "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States,* 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring)). The Court emphasized that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id.* (citing cases involving arrests for failing to wear a seatbelt, driving without a license, failure to provide proof of insurance, and speeding). "But in others, ... the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* at 344, 129 S.Ct. 1710 (citing cases involving arrests for possession of marijuana and crack cocaine).

### B. Reasonable Suspicion Is Required

In this case, the government has not argued that there was probable cause to search Mr. Taylor's vehicle. Moreover, both parties agree that the first prong of *Gant,* based on *Chimel,* does not apply. Mr. Taylor had been placed in handcuffs and removed to the patrol car. He was therefore not "unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant,* 556 U.S. at 343, 129 S.Ct. 1710. Instead, this case turns on *Gant's* second prong, the contours of which this court has yet to fully consider. *See (Courtney) Johnson v. United States,* 40 A.3d 1, 11 (D.C.2012) (search was valid under both prongs of *Gant* ); *(Tashina) Johnson v. United States,* 7 A.3d 1030, 1034–35 (D.C.2010) (probable cause existed to search vehicle, obviating need to determine precise standard governing *Gant's* second prong).[5]

"The Supreme Court did not elaborate on the circumstances when it will be 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Vinton,* 594 F.3d at 25 (quoting *Gant,* 556 U.S. at 343, 129 S.Ct. 1710); *see also Grooms v. United States,* —— U.S. ——, 129 S.Ct. 1981, 1981, 173 L.Ed.2d 1288 (2009) (Alito, J., dissenting from denial of certiorari) (noting that *Gant's* new "test creates a host of uncertainties"). However, we think it evident that the reasonable belief standard articulated in *Gant* requires less than probable cause. This conclusion flows directly from the language in *Gant.* The Supreme Court is well-versed in, and fully capable of invoking, the probable cause standard. If the Court had intended to adopt the probable cause

---

5. Appellant has not contested the scope of the search conducted by the police in this case. *See Gant,* 556 U.S. at 344, 129 S.Ct. 1710 (once police have reason to believe that evidence of the offense of arrest will be found in the vehicle, they may search "the passenger compartment of [the] arrestee's vehicle and any containers therein"); *(Courtney) Johnson,* 40 A.3d at 11 ("Additional evidence seized during the search was recovered from the vehicle's glove compartment, but that too was reasonable, as a search of a vehicle incident to an arrest may include search of containers '[such as] closed or open glove compartments.'" (quoting *Belton,* 453 U.S. at 460 n. 4, 101 S.Ct. 2860)).

standard as the second prong of *Gant*, it surely would have done so. *See State v. Cantrell*, 149 Idaho 247, 233 P.3d 178, 183 (Ct.App.2010) (rejecting, in DUI case, appellant's contention that *Gant's* "reasonable to believe" standard is the same as probable cause). Moreover, application of the probable cause standard would render the second prong of *Gant* superfluous, since law enforcement officers already have the authority to search a vehicle without a warrant if there is probable cause to believe that contraband or other evidence of a crime is hidden inside it. *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (search of an automobile "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained"). We therefore join the nearly unanimous chorus of courts that have held that *Gant's* "reasonable to believe" standard is less than probable cause. *See, e.g., Vinton*, 594 F.3d at 25; *People v. Chamberlain*, 229 P.3d 1054, 1057 (Colo.2010) (en banc); *State v. Mbacke*, —— N.C. ——, 721 S.E.2d 218, 222 (2012).

How much less? An intriguing passage in *Gant* suggests that the Supreme Court may have intended to create an almost categorical link between the offense of arrest and the right to search. "In many cases," the Court said, "as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." 556 U.S. at 343, 129 S.Ct. 1710.[6] "But in others, including *Belton* and *Thornton*, the offense of arrest *will supply* a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* at 344, 129 S.Ct. 1710 (emphasis added).[7]

Some courts have read this passage to approve a *per se* rule that certain offenses will never provide an officer with reasonable belief that an automobile contains evidence of the offense, while other offenses always will. *See, e.g., United States v. Tinsley*, 365 Fed.Appx. 709, 711 (8th Cir. 2010) (unpublished) ("[T]he officers' observations of Tinsley's behavior coupled with the strong odor of alcohol gave them a reasonable basis to believe that evidence relevant to Tinsley's intoxication (*i.e.*, the means of intoxication such as bottles containing alcohol) might be found in the vehicle."); *People v. Nottoli*, 199 Cal.App.4th 531, 130 Cal.Rptr.3d 884, 902–03 (2011) ("The Supreme Court in *Gant* indicated that the nature of the crime of arrest was determinative...."); *Cantrell*, 233 P.3d at 185 ("Cantrell was arrested for DUI, and the DUI supplied the basis for the search."). But such a categorical approach seems inconsistent with the Supreme Court's concern that "[a] rule that gives police the power to conduct [ ] a search

---

6. Here the Supreme Court cited two examples: a case involving speeding, *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998); and another involving failure to wear a seatbelt, driving without a license, and failure to provide proof of insurance. *Atwater v. Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). On the cited page in *Knowles*, the Court observed that "[n]o further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." 525 U.S. at 118, 119 S.Ct. 484.

7. Both *Belton* and *Thornton* involved searches of vehicles after their occupants were arrested for possession of narcotics. In *Belton*, a police officer conducting a lawful traffic stop for speeding smelled burnt marijuana and saw on the floor of the car an envelope marked "Supergold," a name which he associated with marijuana. 453 U.S. at 455–56, 101 S.Ct. 2860. In *Thornton*, the defendant, who had just exited his vehicle, agreed to a patdown, during which the police officer found three bags of marijuana and a large amount of cocaine. 541 U.S. at 618, 124 S.Ct. 2127.

whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals." *Gant,* 556 U.S. at 345, 129 S.Ct. 1710.

Other courts applying the second prong of *Gant* have held that reasonable belief is akin to the reasonable suspicion standard applied to brief investigatory stops under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As these courts have recognized, *see, e.g., Vinton,* 594 F.3d at 25, the term "reasonable to believe" is nearly identical to language the Supreme Court has used to describe *Terry's* reasonable suspicion standard. *See Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (a *Terry* search is permissible if the officer "has *reason to believe* that the suspect is armed and dangerous") (emphasis added). In addition, the second prong of *Gant* requires only that it be reasonable to believe that evidence *"might"* be found, a level of certainty comparable to that required for *Terry* stops. *See Terry,* 392 U.S. at 30, 88 S.Ct. 1868 (brief frisk for weapons permissible when officer could "reasonably ... conclude ... that criminal activity *may* be afoot and that the persons with whom he is dealing *may* be armed and presently dangerous") (emphasis added); *Chamberlain,* 229 P.3d at 1057 ("[B]ecause the majority [in *Gant* ] at several points requires only a reasonable belief that evidence 'might' be found, it seems more likely that the Court intended a lesser degree of suspicion commensurate with that sufficient for limited intrusions, like investigatory stops.").

As some of these courts have emphasized, practical considerations also counsel in favor of concluding that *Gant's* reasonable belief standard is analogous to reasonable suspicion. Both the police and the courts are already familiar with the reasonable suspicion standard. *Mbacke,* 721 S.E.2d at 222. In addition, applying the well-established *Terry* doctrine would limit the proliferation of Fourth Amendment standards and prevent the associated confusion that such profusion would sow.

■ In this case, the government has not asked us to hold that *Gant* created a *per se* rule, and we decline to do so *sua sponte.* For the reasons just described, and in the absence of further guidance from the Supreme Court, we hold that officers must have reasonable, articulable suspicion to conduct a vehicle search under the second prong of *Gant.*

### C. Fleshing Out the Standard

Drawing from our precedents in the *Terry* context, we conclude that to justify a search for evidence under *Gant's* "reasonable to believe" standard, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Germany v. United States,* 984 A.2d 1217, 1222 (D.C.2009) (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. 1868). This standard "requires a showing considerably less than preponderance of the evidence," *Pinkney v. United States,* 851 A.2d 479, 493 (D.C.2004) (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)), but "more than a mere 'hunch' or 'gut feeling,'" *Bennett v. United States,* 26 A.3d 745, 751 (D.C.2011) (quoting *James v. United States,* 829 A.2d 963, 966 (D.C. 2003)).

■ In determining whether this reasonable suspicion standard has been met, a court must consider the totality of the circumstances, *Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc) (quoting *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)), as

"viewed through the lens of a reasonable police officer, guided by his training and experience," *Bennett,* 26 A.3d at 751 (quoting *Pinkney,* 851 A.2d at 493) (internal editing and quotation marks omitted). As this court and the Supreme Court have repeatedly affirmed, an officer's "consideration of the modes or patterns of operation of certain kinds of lawbreakers," as well as "common sense conclusions about human behavior" may contribute to reasonable suspicion. *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see also Umanzor v. United States,* 803 A.2d 983, 992 (D.C.2002) (same); *Vinton,* 594 F.3d at 26 (construing *Gant* and observing that when a vehicle occupant has been arrested for possession of narcotics, "a type of contraband sufficiently small to be hidden throughout a car and frequently possessed in multiple quantities," it is "reasonable to believe additional narcotics remain in the car").

■ Although we eschew a *per se* rule, we recognize that a court may not ignore the offense of arrest in determining whether an evidentiary search of an automobile was justified under *Gant.* The facts establishing probable cause for an arrest often will provide justification for a search. In *Chambers v. Maroney,* for example, a case involving probable cause to search an automobile, the Supreme Court noted that, "as will be true in many cases, the circumstances justifying the arrest are also those furnishing probable cause for the search." 399 U.S. 42, 47 n. 6, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *see (Tashina) Johnson,* 7 A.3d at 1034 n. 4 (noting that, for certain offenses, such as possession of a firearm, evidence may "serve[ ] double duty, creating probable cause not only to arrest the [occupant] but also to believe that the [vehicle] contain[s] other [contraband]").

The same principle informs our understanding of *Gant* and is illustrated by two local cases interpreting that decision: *Vinton* and *Dawkins.* In *Vinton,* the vehicle occupant was arrested for carrying a dangerous weapon after the police saw a sheathed knife in plain view on the backseat of the car and, pursuant to a protective search of the car under *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), located a "butterfly knife" and other suspicious items. 594 F.3d at 18–19, 20–21. After the arrest, the police opened a locked briefcase found in the car, and the D.C. Circuit upheld this post-arrest search under *Gant.* Specifically, the court determined that

[t]he facts of this case establish that [the arresting officer] was reasonable in expecting there might be additional weapons in the car, particularly in the locked briefcase found on the backseat. Most significantly, Officer Alton already had found *two* knives, one of which was hidden. He also had found two cans of mace and a bag of earplugs.... [H]aving found two objects, mace and earplugs, that suggested at least a possible association with weapons, along with two other objects, a sheathed knife and a butterfly knife, that were clearly capable of being used as weapons, Officer Alton had an objectively reasonable basis for believing that additional weapons might be inside the car.

*Id.* at 26. Likewise in *Dawkins v. United States,* 987 A.2d 470, 476 (D.C.2010), this court upheld a post-arrest vehicle search under *Gant* where the police, "having observed appellant lean into the car and close the door shortly before he was seen with a marijuana blunt, ... reasonably could have believed that appellant had additional marijuana or drug paraphernalia in the car...."

How do these principles apply to this arrest for driving under the influence? Whenever probable cause exists to effect an arrest for DUI, there will be evidence that the individual in question is intoxicated, has been drinking recently, and has been driving despite being (and perhaps while becoming) inebriated. In this case, the police certainly had reason to believe (indeed, they had probable cause to conclude) that Taylor was drunk. The smell of alcohol was on his breath, he was swaying back and forth, he had lost control of his vehicle, and he had urinated on a nearby tree. The breath test showed a blood alcohol content of .161. This evidence gave ample reason to believe that Mr. Taylor had consumed alcohol. But there was nothing in particular—no tell-tale sign—to suggest that he had been drinking in his vehicle.

It was, of course, *possible* that evidence of drinking—such as empty or partially full containers of alcohol—would be found in the vehicle, just as it is possible that such evidence may be found in any vehicle driven by an intoxicated individual. But the question under the second prong of *Gant* is whether it is reasonable to believe that such evidence might be found in this specific vehicle. The suspicion must be particularized. As with a search justified by probable cause, we must assess the likelihood that "evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Reasonable suspicion ... requires the police to have 'a particularized and objective basis for suspecting' that the search will be productive." *United States v. Scott*, 987 A.2d 1180, 1196 (D.C.2010) (discussing strip searches of arrested persons, which must be separately justified by reasonable suspicion).

Thus, other courts applying the second prong of *Gant* have looked beyond the nature of the offense and emphasized facts particular to the case. For example, in *United States v. Washington*, 670 F.3d 1321 (D.C.Cir.2012), the United States Court of Appeals for the District of Columbia Circuit recently upheld the search of a vehicle. After stopping the defendant for a minor traffic offense, the police developed probable cause to arrest him for driving with an open container of alcohol. *Id.* at 1325. There was a strong smell of alcohol coming from the car, and officers saw a small amount of red liquid in an open cup. *Id.* at 1324. They then searched the vehicle, discovering a loaded gun under the driver's seat. *Id.* The court concluded that "[i]t was objectively reasonable, given the 'small amount' of red liquid in the cup and the puddle on the car floorboard that the officers testified smelled of alcohol, for the officers to believe that they might find another container of alcohol in the car—*i.e.*, the source of the liquid in the cup and the puddle." *Id.* at 1325.

*United States v. Grote*, 629 F.Supp.2d 1201 (E.D.Wash.2009), involved an arrest for DUI which led to the discovery of a loaded handgun under the driver's seat. Explaining that it was hesitant to apply any *per se* rule either allowing or forbidding a search, the court denied a motion to suppress. *Id.* at 1204–05. "Under the totality of the circumstances in this case (Defendant's physical condition and there appearing to be a bottle of alcohol inside a brown paper bag located next to Defendant in vehicle), it would have been reasonable for an officer to believe that evidence of DUI 'might' be found in the vehicle." *Id.* at 1205. The Ninth Circuit affirmed in an unpublished opinion, concluding that "[i]t was reasonable to believe that the car might contain one or more bottles of open liquor or drugs." *United States v. Grote*,

408 Fed.Appx. 90, 91 (9th Cir.2011); *see also United States v. Francis*, 2011 WL 5837182, at *3 (D.Kan. Nov. 21, 2011) (search justified by probable cause to arrest for DUI, plus "a strong odor of alcohol coming from the car").[8] In some of these cases there may have been more proof than necessary to satisfy *Gant's* "reasonable to believe" standard, but they nevertheless illustrate the need to focus on the facts surrounding the arrest.

### D. The Evidence in This Case

■ Here, the government points to three factors apart from the nature of the offense that arguably provided reason to believe that evidence of drinking would be found in the vehicle—Officer Weber's experience, appellee's false statement, and appellee's opportunity to hide something in the vehicle.

As we have explained, Officer Weber's experience must be considered as part of the totality of the circumstances. In this case, however, "we know too little about Officer [Weber's] experience," *Duckett v. United States*, 886 A.2d 548, 552 (D.C. 2005), to place much weight upon his conclusory statement that "typically someone who is driving under the influence also has an open container of alcohol or multiple containers of alcohol in their vehicle." Without a great deal more detail, we have no basis for determining whether such behavior is indeed "typical" of someone driving under the influence. Moreover, relying uncritically on that experience would amount to endorsing a *per se rule* governing DUI cases. *See id.* at 553 ("Whatever

Officer Gallagher's experience in traffic stops of others, we think that the necessary particularized and objective basis for suspecting Duckett was absent here.").

To be sure, appellee claimed that he had consumed two beers at his sister's house two hours earlier. In light of his obvious intoxication at the time of arrest, there was an objectively reasonable inference that Mr. Taylor was not being truthful about the timing and amount of his drinking. But that falsehood indicated only that he had been drinking much more recently or in much greater quantities than he had admitted. For example, it might have suggested that he had just left his sister's house, after drinking many more beers than two. Or that he had recently been drinking at a bar. It did not make it any more likely that he had been drinking in the vehicle.

Appellee had also spent "a while" in his truck looking for his insurance card. Yet, without more, the fact that appellee had time to hide evidence does not tell us anything about whether there was any evidence to be hidden. There was no testimony that appellee was nervous, that he made furtive gestures, or that he appeared to be attempting to hide something in the vehicle. It is also important to remember that appellee returned to his vehicle and searched around to fulfill Deputy Beard's request to see his insurance card.

We, of course, may not view each of these factors in isolation. *See United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (forbid-

8. Although the facts of the DUI offense may support an inference that evidence of alcohol consumption might be found in the vehicle, in some cases the police may be aware of additional facts that would make such an inference unreasonable. For example, the trial court used a hypothetical found in *United States v. Reagan*, 713 F.Supp.2d 724, 732–33 (E.D.Tenn.2010). If a police officer watched a man drunkenly stumble out of a bar, get into his vehicle, and start driving, and if the officer then immediately pulled that driver over, it would not be reasonable to conduct an evidentiary search of the vehicle under *Gant. Id.*

ding "this sort of divide-and-conquer analysis"). But even when the totality of the circumstances is considered, it was not "reasonable to believe" that appellee's vehicle might contain evidence of drinking.

### III.   Conclusion

The search of appellee's vehicle was not justified as a search incident to arrest because the police did not have reasonable, articulable suspicion that evidence of the offense of arrest would be found there. The order of the Superior Court suppressing evidence is hereby

*Affirmed.*