*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 13-CO-1299 & 13-CO-1456

UNITED STATES, APPELLANT,

V.

WILLIAM A. NASH, JR. and DAVID LEWIS, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(CF2-3756-13 & CF2-10190-13)

(Hon. Robert I. Richter, Trial Judge)

(Argued May 8, 2014                                   Decided September 25, 2014)

*David B. Goodhand*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman* and *Christian Natiello*, Assistant United States Attorneys, were on the brief, for appellant.

*Cecily E. Baskir* for appellee William A. Nash, Jr.

*Christine A. Monta*, with whom *James W. Klein* and *Samia Fam* were on the brief, for appellee David Lewis.

Before FISHER and MCLEESE, *Associate Judges*, and PRYOR, *Senior Judge*.

MCLEESE, *Associate Judge*:  These consolidated appeals arise from two separate incidents but present a common legal question:  in what circumstances may police officers search a car for additional evidence after seeing an open

container of alcohol in the car. In each case, the trial court suppressed evidence recovered in such a search, holding that the search was unlawful under the Fourth Amendment. The United States seeks interlocutory review of the trial court's suppression orders. D.C. Code § 23-104 (a)(1) (2012 Repl.). We affirm the suppression ruling in appellee Nash's case and reverse the suppression ruling in appellee Lewis's case.

**I.**

**A.**

The evidence presented at the suppression hearing in Mr. Nash's case indicated the following. At approximately 1 a.m. on March 10, 2013, Metropolitan Police Department ("MPD") Officers Winston and Parrish were driving on Florida Avenue NW when they saw Mr. Nash. Mr. Nash was holding a red-and-silver can as he stood between the driver-side door of a car and the car itself. Because the officers believed that Mr. Nash was holding an open container of alcohol, they stopped, got out of their vehicle, and walked toward Mr. Nash. After looking in the direction of the officers, Mr. Nash went into his car. When he emerged, he was holding a clear water bottle instead of the can. He shut the car door and walked

around the car. When Officer Winston asked Mr. Nash what he was doing with the bottle, Mr. Nash replied that he was getting ready to throw it away. Officer Parrish did not see a trash can nearby.

Meanwhile, Officer Parrish looked into the car and saw the red-and-silver can in the car's center console. The can was open, and Officer Parrish recognized it as being an approximately twenty-ounce can of Four Loko, which is an alcoholic beverage. Officer Parrish opened the car and confirmed by smell that the can contained alcohol. The can was less than half full. Officer Parrish removed the can from the car. After Officer Parrish told Officer Winston what he had found, Officer Winston placed Mr. Nash under arrest for possession of an open container of alcohol ("POCA"), in violation of D.C. Code § 25-1001 (a)(2) (2012 Repl.).

Officer Parrish went back into the car to search for additional alcohol. During the search, he noticed a clear plastic first-aid box sitting on the front passenger-side seat. He could see a handgun inside the box. The officers also found five nine-millimeter rounds of ammunition in the trunk.

The trial court granted Mr. Nash's motion to suppress evidence of the gun and the ammunition. The trial court concluded that the officers did not have

reasonable, articulable suspicion to search the car for additional evidence of POCA, because Mr. Nash's possession of the Four Loko can did not logically suggest that the car contained additional alcohol or other evidence of any crime. The trial court also pointed out that there was no evidence that Mr. Nash was intoxicated or smelled of alcohol.

**B.**

The evidence presented at the suppression hearing in Mr. Lewis's case indicated the following. At approximately 2 a.m. on June 16, 2013, United States Park Police Officer Alto was driving on Ingraham Street NW when he saw a car on the road with a non-functioning headlight. While following the car, Officer Alto determined that the car was registered to David Lewis, who had a suspended license. The car's driver drove a couple of blocks and pulled over into a parking spot, after which the driver got out of the car. Officer Alto pulled up and spoke to the driver, who was appellee Lewis. When Officer Alto asked Mr. Lewis for his license and registration, Mr. Lewis opened the car door, enabling Officer Alto to see an open bottle of Patron tequila in the center-console cup holder. The bottle was half full. Mr. Lewis's passenger, Brittney Gibbs, said that the bottle was hers. Officer Alto told Ms. Gibbs to bring him the bottle, which Ms. Gibbs did by

walking around the car and handing the bottle to Officer Alto.

After confirming that Mr. Lewis's license had been suspended, Officer Alto put Mr. Lewis in handcuffs. The officers did not smell any alcohol coming from Mr. Lewis or Ms. Gibbs. A second officer, Officer Brown, arrived on the scene, and Officer Alto asked her to search the car for additional open containers of alcohol. In Officer Alto's experience, "the majority of times when there is a tequila or liquor type of beverage in a vehicle, they'll be drinking through cups." Similarly, in Officer Brown's experience, people rarely drink directly out of Patron bottles and instead use cups. The officers decided to search the car, both for additional evidence of POCA and because it was possible that Ms. Gibbs could have been permitted to drive the car away afterward, and the officers therefore wanted to make sure that there was no additional alcohol or other contraband in the vehicle.

At the time Officer Brown arrived, Ms. Gibbs was outside the vehicle, saying that she needed to go to the bathroom. Officer Brown told Ms. Gibbs that she could not leave. Officer Brown opened the driver-side door and smelled marijuana. Officer Brown found a cup containing liquid that smelled like alcohol on the floor of the front passenger seat, and Ms. Gibbs said that the cup was hers.

Officer Brown also found a loaded handgun and a box of ammunition in a bag in the back seat. Finally, Officer Brown found a cigarette containing a green plant-like substance in the passenger-side door.

According to Officer Brown, Ms. Gibbs was not under arrest at the time the search of the car began. Once Officer Brown found the gun, she placed Ms. Gibbs in handcuffs. A subsequent search revealed a bag of marijuana on Ms. Gibbs's person.

The trial court granted Mr. Lewis's motion to suppress evidence of the gun, the ammunition, and the marijuana, concluding that the officers did not have reasonable, articulable suspicion to search the vehicle for evidence of POCA.

## II.

When reviewing a trial court's decision on a motion to suppress, we uphold the trial court's findings of fact unless those findings are clearly erroneous, and we view the facts and make all reasonable inferences in the light most favorable to the trial court's ruling. *See United States v. Taylor*, 49 A.3d 818, 821 (D.C. 2012). We review the trial court's legal conclusions de novo. *Id.* at 819.

"A search conducted without a warrant is per se unreasonable under the Fourth Amendment unless it falls within . . . specific and well-established exceptions." *Taylor*, 49 A.3d at 821 (internal quotation marks omitted). Under one such exception, police officers may conduct a warrantless search of a vehicle, incident to an arrest, if they have reasonable, articulable suspicion to believe that the search might yield evidence relevant to the crime of arrest. *Arizona v. Gant*, 556 U.S. 332, 337 (2009); *Taylor*, 49 A.3d at 823-24. "This standard requires a showing considerably less than preponderance of the evidence but more than a mere hunch or gut feeling." *Taylor*, 49 A.3d at 824 (internal quotation marks and citations omitted). "In determining whether this . . . standard has been met, a court must consider the totality of the circumstances, as viewed through the lens of a reasonable police officer, guided by [the officer's] training and experience." *Id.* at 824-25 (internal quotation marks and citations omitted).

"In many cases, as when a recent occupant [of a vehicle] is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others . . . the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, 556 U.S. at 344 (citations omitted). The inquiry does not turn on

per se rules based solely on the nature of the offense of arrest, however, but rather requires a case-specific inquiry into whether, in the particular circumstances, the police have a reasonable, articulable suspicion that relevant evidence might be found in the specific vehicle at issue. *Taylor*, 49 A.3d at 822-28.

In applying the foregoing principles to the particular circumstances of the two cases before us, we look first to the way in which those principles were applied to the particular circumstances in *Gant* and *Taylor*. In *Gant*, the police arrested the defendant based on an outstanding arrest warrant for driving with a suspended license. 556 U.S. at 336. The Supreme Court held that the search of the defendant's vehicle for evidence was unlawful, because "driving with a suspended license [was] an offense for which police could not expect to find evidence in the passenger compartment of [the defendant's] car." 556 U.S. at 344.

In *Taylor*, the defendant drove a pickup truck into the back of a vehicle occupied by three Deputy United States Marshals. 49 A.3d at 820. The defendant smelled of alcohol, was swaying, and slurred his words. *Id.* He claimed to have had two beers at his sister's house, two hours earlier. *Id.* He failed a field sobriety test, and a roadside blood test indicated that his blood-alcohol content was .161. *Id.* After arresting the defendant for driving under the influence ("DUI"), officers

searched the truck and found a loaded handgun. *Id.* At a subsequent suppression hearing, one of the officers testified that,

> [b]ased on his experience with "numerous DUI investigations," . . . "typically someone who is driving under the influence also has an open container of alcohol or multiple containers of alcohol in their vehicle." In other cases, he had found alcohol "in the glove box, underneath seats . . . [and] in the map compartments along side the doors."

*Taylor*, 49 A.3d at 820-21.

The trial court held that the search of the truck was unlawful, because the government's evidence was too generalized and because the trial court was unwilling to adopt a per se rule permitting vehicle searches after DUI arrests. *Taylor*, 49 A.3d at 821.

The government appealed, and this court affirmed. *Taylor*, 49 A.3d at 821-28. The court explained that "there was nothing in particular – no tell-tale sign – to suggest that [the arrestee] had been drinking in his vehicle." *Taylor*, 49 A.3d at 826. We declined to put much weight on the officer's testimony that individuals arrested for DUI typically have open containers of alcohol or multiple containers of alcohol in their vehicles, because we viewed the officer's testimony

as lacking in detail and because we were concerned that "relying uncritically on that testimony would amount to endorsing a per se rule governing DUI cases." *Id.* at 827. Although we acknowledged that the police could reasonably have disbelieved the defendant's claim that he had consumed only two beers two hours earlier, we concluded that the defendant's falsehood on that point "did not make it any more likely that he had been drinking in the vehicle." *Id.* at 827.

## A.

In Mr. Nash's case, we hold that the officers did not have reasonable, articulable suspicion to search the car for additional evidence after arresting Mr. Nash for POCA and seizing the Four Loko can. The record in Mr. Nash's case is weaker than the record that we viewed as insufficient in *Taylor.* There was no evidence that Mr. Nash appeared intoxicated or that the car smelled of alcohol. No officer testified to having experience recovering additional evidence of POCA from arrestees' vehicles in comparable circumstances. There was no evidence that Four Loko is typically packaged, sold, or consumed in a manner that would suggest that additional cans of Four Loko, or other evidence relevant to POCA, would be in the car. It is true that a container of alcohol was visible in the vehicle

in Mr. Nash's case, whereas no such container was visible in the truck in *Taylor*. But it is equally true that there was evidence in *Taylor* that the defendant had been drinking substantial quantities of alcohol, whereas there was no such evidence in Mr. Nash's case. When the circumstances of the two cases are compared as a whole, we conclude that fidelity to *Taylor* compels the conclusion that the police lacked an adequate basis to conduct a vehicle search for further evidence of POCA in Mr. Nash's case. *Cf. State v. Burke*, 936 N.E.2d 1019, 1022-23 (Ohio Ct. App. 2010) (defendant was arrested for POCA after beer bottle fell out and shattered when defendant got out of car; search of vehicle incident to arrest was impermissible, because "the officer had no reason to believe that the vehicle contained evidence of the offense of arrest, i.e., open container").

We are not persuaded by the United States's arguments to the contrary. First, the United States relies on our prior decisions in *United States v. Watson*, 697 A.2d 36 (D.C. 1997) (after police saw driver smoking joint of marijuana, smelled odor of marijuana in car, and found packets of heroin in car, suggesting inference that driver was selling heroin, police had probable cause to search trunk for additional drugs and paraphernalia), and *Mitchell v. United States*, 746 A.2d 877 (D.C. 2000) (police had probable cause to search car for marijuana, based on occupant's admission that marijuana was in car). Neither case is controlling on its

facts, given the obvious differences between the circumstances of those cases and the circumstances of Mr. Nash's case.

As the United States points out, however, this court in *Watson* relied upon the decision of the Seventh Circuit in *United States v. McGuire*, 957 F.2d 310 (1992). *See Watson*, 697 A.2d at 39. In *McGuire*, after police officers activated their emergency lights to pull a car over for a traffic violation, they saw a passenger in the car apparently placing something on the floorboard or under the seat. *Id.* at 312. Pursuant to a consent search, the police learned that a brown paper bag on the floorboard contained a half-empty bottle of malt liquor and two other unopened bottles. *Id.* at 313. The Seventh Circuit held that these circumstances gave the police probable cause to believe that car contained additional contraband or other evidence. *Id.* at 314. *McGuire* is much closer factually to Mr. Nash's case, though there are pertinent differences, including that the car in *McGuire* contained multiple occupants and multiple bottles of alcohol. *McGuire*, however, provides no explanation for its probable-cause holding, and it appears to apply a per se rule -- discovery of some contraband in a vehicle establishes probable cause to search the vehicle for additional contraband -- that cannot be reconciled with the approach this court adopted in *Taylor*. *McGuire*, 957 A.2d at 314. We view ourselves as bound to follow *Taylor* rather than *McGuire*.

That is true even though this court relied on *McGuire* in *Watson*. *McGuire* was one of several cases this court relied upon in *Watson*, and the court's reliance appears to have been focused on *McGuire*'s holding that a probable-cause search for additional evidence could extend to the trunk. *Watson*, 697 A.2d at 39. We do not understand this court in *Watson* to have adopted all aspects of the reasoning of *McGuire* as the controlling law of this jurisdiction.

Second, the United States cites numerous decisions upholding automobile searches for additional evidence after the police found one or more open containers of alcohol in a vehicle. Those decisions give us pause but ultimately do not persuade us. In most of the cited decisions, other circumstances -- not present in Mr. Nash's case -- supported an inference that additional evidence might be found in the vehicle. *See, e.g.*, *People v. Souza*, 19 Cal. Rptr. 2d 731, 732-35 (Ct. App. 1993) (driver was operating car erratically, officer could smell alcohol coming from car, another passenger was in car, and two-thirds empty bottle of tequila was located behind driver's side headrest, inside a torn-open box of Budweiser beer). Other decisions are similar to the Seventh Circuit's decision in *McGuire*, in that they appear to apply a per se rule that cannot be reconciled with the approach this court adopted in *Taylor*. *See, e.g.*, *State v. Collard*, 414 N.W.2d 733, 734-36 (Minn. Ct. App. 1988) (search of car for further evidence justified by presence of

single open bottle of beer in car; "upon observing evidence in plain view, a warrantless search of the remainder of the passenger compartment is justified").[1]

Third, the United States argues that Mr. Nash acted suspiciously after noticing the police in the area, by "ducking into" his car, switching the Four Loko can for a water bottle, walking away from the car, and claiming that he planned to discard the water bottle even though no trash can was nearby. Officer Parrish, however, did not describe Mr. Nash as "ducking into" the car. More generally, Officer Parrish did not explicitly testify that he viewed Mr. Nash's conduct as suspicious at all, much less explain why that conduct would suggest that evidence beyond the Four Loko can itself might be found in the car. Under the circumstances, we do not view Mr. Nash's conduct as contributing materially to an

---

[1] The United States also cites cases involving various other kinds of contraband, such as illegal drugs and weapons. The question whether the discovery of an item of contraband in a vehicle provides a basis for a search of the vehicle for other similar items depends on the totality of the circumstances in a given case. The nature of the contraband at issue is one highly relevant circumstance. The inference that a gun might be accompanied by ammunition or other guns, or that a quantity of illegal drugs might be accompanied by additional drugs or drug paraphernalia, is quite different from the inference that a single can of beer might be accompanied by additional cans of beer or other evidence of a POCA offense. For example, items that are per se contraband, such as illegal drugs, might be more likely to be placed out of view than items, such as alcohol, that are only contraband if opened. We find our decision in *Taylor* more instructive than decisions involving other forms of contraband and circumstances significantly different from those of Mr. Nash's case.

inference that additional evidence of POCA would be found in the car in Mr. Nash's case.[2]

In sum, although it was certainly possible that the car in Mr. Nash's case might contain additional evidence of a POCA violation, we conclude that the police lacked a reasonable, articulable suspicion justifying a further search of the car for such evidence. We therefore affirm the trial court's order suppressing the evidence recovered in the search the car conducted after the Four Loko can was removed from the car.

---

[2] The United States and Mr. Nash make various extra-record assertions about the characteristics of Four Loko and the habits of beer drinkers. As judges we may -- in fact must -- bring our common sense to determinations of probable cause. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (probable-cause determination requires judicial officers to make "practical, common-sense decision"). But we normally may not base our rulings on factual information that was not made part of the record in the trial court. *See, e.g.*, *Dalton v. United States*, 58 A.3d 1005, 1019 n.20 (D.C. 2013). We need not address the precise boundary between these two principles, however, because we do not view the assertions made by the parties as altering the proper disposition of Mr. Nash's case. We do note, however, that neither the record nor our common experience supports the United States's suggestion that, when a can of beer is found in a car, one can assume that the can was purchased so recently that it would be reasonable to search the car for "proof of acquisition."

**B.**

In contrast, we find that the officers had reasonable, articulable suspicion to believe that Mr. Lewis's car contained additional evidence of POCA. The car was occupied by two people, and the large container of tequila was sitting between them, in the center-console cup holder. Officer Alto and Officer Brown both indicated, based on their experience, that they believed that they would find cups in the car. Both officers also explained the basis for their belief: people usually use cups to drink tequila and similar types of hard alcohol, rather than drinking straight out of the bottle. The officers' testimony was not "conclusory" or unexplained, and we do not accept their testimony "uncritically." *Taylor*, 49 A.3d at 827. Rather, we view their testimony as reflecting practical common sense. *Cf., e.g.*, *People v. Tashbaeva*, 938 N.Y.S.2d 873, 879 (Crim. Ct. 2012) (in case involving bottle of cognac, court notes that "alcoholic beverages are often contained in and drunk from items such as cups, thermoses, cans, and bottles which do not contain an obvious alcohol label"). *See generally, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (noting role of common sense in Fourth Amendment determinations). Moreover, approving the search in the particular circumstances of Mr. Lewis's case would not "amount to endorsing a per se rule in [POCA] cases." *Taylor*, 49 A.3d at 827 (emphasis deleted). We therefore conclude that the officers in Mr.

Lewis's case had reasonable, articulable suspicion to search the car for additional evidence of Ms. Gibbs's POCA offense.

We are not convinced by Mr. Lewis's arguments to the contrary. First, Mr. Lewis argues that there was no evidence that either he or Ms. Gibbs had been drinking from the tequila bottle, as opposed to simply transporting it to be consumed elsewhere. It is true that there was no evidence that either Mr. Lewis or Ms. Gibbs appeared intoxicated, or that Ms. Gibbs, Mr. Lewis, or the car smelled of alcohol. We conclude, however, that officers could reasonably draw the common-sense inference that the placement of the half-full bottle of tequila in the center-console cup holder was more suggestive of consumption in the car than of transportation in the car for future consumption elsewhere.

Second, Mr. Lewis argues that even if the officers had reasonable, articulable suspicion to search for cups in the car, cups would not be relevant to proving POCA unless the cups contained remnants of alcohol. We disagree. Whether or not they contained alcohol, cups found in proximity to the tequila bottle, and in particular to Ms. Gibbs, would be relevant to whether Ms. Gibbs was drinking from, or planned to drink from, the tequila bottle, and thus constructively possessed the tequila bottle. *See generally, e.g.*, *Perkins v. United States*, 936 A.2d

303, 306 (D.C. 2007) (POCA case; constructive possession requires proof that defendant knew of presence of contraband, had power to exercise dominion and control over contraband, and intended to exercise dominion and control over contraband). *Cf., e.g.*, *State v. Mathews*, 484 P.2d 942, 944 (Wash. Ct. App. 1971) (evidence that defendant was sitting near drug paraphernalia supported inference that defendant was in possession of heroin in car); *Flake v. State*, 948 So. 2d 493, 498 (Miss. Ct. App. 2007) (possession of drug paraphernalia is relevant to possession of illegal drugs) (citing cases).[3]

Third, Mr. Lewis points out that although Officer Brown testified that she found a cup containing alcohol in the car on the floor near the front passenger seat, Officer Brown admitted that she poured the liquid out of the cup and took no steps to preserve the cup or its contents as evidence. Given those circumstances, Mr. Lewis argues, it would be a "fiction" to believe that the police were genuinely looking for evidence to corroborate a POCA charge. Although we understand Mr.

---

[3] Given the testimony that Ms. Gibbs was sitting next to the tequila bottle, which was in plain view, and admitted that the tequila bottle was hers, one could ask whether the police officers needed to search for additional evidence to corroborate a POCA charge against her. There was no way, however, for the officers to predict at the time of the search whether Ms. Gibbs would later admit or deny having said that the tequila was hers, or whether the other circumstances of the encounter would be admitted or disputed. In any event, Mr. Lewis has not disputed that the inquiry under *Gant* is into the relevance of additional evidence, not the government's need for additional evidence.

Lewis's point, the trial court found Officer Alto "to be perfectly credible" and both officers to be "honest." We have no basis upon which to discredit the testimony indicating that Officer Brown was searching the car for open containers of alcohol, including cups. In any event, the pertinent inquiry under *Gant* is objective rather than subjective: whether the police had "reason to believe that that evidence of the offense of arrest would be discovered in the vehicle." *Taylor*, 49 A.3d at 819. *See also, e.g.*, *State v. Ogeda*, 315 S.W.3d 664, 666-68 (Tex. App. 2010) (question whether officers had sufficient reason to believe search of car would uncover additional evidence turns on objective circumstances rather than officers' subjective intentions); *see generally, e.g.*, *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011) ("Fourth Amendment reasonableness is predominantly an objective inquiry. We ask whether the circumstances, viewed objectively, justify the challenged action. If so, the action was reasonable *whatever* the subjective intent motivating the relevant officials.") (citations, internal quotation marks, and brackets omitted).

## III.

Mr. Lewis argues in the alternative that the search of his car was not a lawful search incident to the arrest of Ms. Gibbs for POCA, because the officers searched

the car at a time when they had decided not to arrest Ms. Gibbs. Mr. Lewis does not appear to have made that argument in the trial court, and the trial court did not address it. The United States, however, has not contended that the argument is not properly before us. We therefore consider the argument.[4]

Mr. Lewis first contends that this case is governed by the Supreme Court's decision in *Knowles v. Iowa*, 525 U.S. 113 (1998). We disagree. In *Knowles*, a police officer had probable cause to arrest the defendant for speeding. 525 U.S. at 114. Instead, the officer issued a citation to the defendant.[5] *Id.* Nevertheless, the officer searched the defendant's car, finding a bag of marijuana and a pipe. *Id.* The officer then arrested the defendant for drug offenses. *Id.*

The Supreme Court held that the search was unlawful under the Fourth

---

[4] The United States suggests that we need not reach the issue, because the search of Mr. Lewis's car was supported not merely by reasonable, articulable suspicion, but also by probable cause, and thus was lawful under the automobile exception to the warrant requirement. *See Gant*, 556 U.S. at 347 (police may search car without warrant if there is probable cause to believe car contains evidence of criminal activity). The parties dispute whether the United States properly presented that argument to the trial court, and we do not view either that issue or the merits of the probable-cause argument to be free from doubt. We therefore decide Mr. Lewis's challenge to the legality of the search under *Gant*.

[5] A citation is a "police-issued order to appear before a judge on a given date to defend against a stated charge, such as a traffic violation." *Black's Law Dictionary* 297 (10th ed. 2014).

Amendment. *Knowles*, 525 U.S. at 115-19. The Court explained that searches incident to arrest are permitted for two reasons: the need to disarm suspects before taking them into custody and the need to discover and preserve evidence. *Id.* at 116. The Court concluded, however, that neither justification was present, because issuance of a citation does not present the risks associated with taking a suspect into custody and transporting the suspect to the police station, and because no evidence of the speeding offense was going to be uncovered in any further search. *Id.* at 117.

Mr. Lewis contends that his case is not meaningfully different from *Knowles*. We conclude that there are several potentially significant differences between the facts of Mr. Lewis's case and the facts of *Knowles*. In *Knowles*, the officer had made a definite decision not to arrest the defendant for the speeding offense, the officer had communicated that decision to the defendant, and the officer never arrested the defendant for the speeding offense that was the asserted predicate for the search. 525 U.S. at 115-19. Mr. Lewis's case differs from *Knowles* on all three points. First, the record does not establish that the officers in this case had definitely decided not to arrest Ms. Gibbs for POCA at the time of the car search. It is undisputed that the police had seized Ms. Gibbs at the time of the search and that they had probable cause to arrest her for POCA. The officers did

not testify that they had definitely decided not to arrest Ms. Gibbs at the time of the search; rather, their testimony indicated only that they did not view Ms. Gibbs as under arrest at that time and that it was possible that she might ultimately have been permitted to drive the car away. The trial court did not make a clear finding on this point, perhaps in part because Mr. Lewis had not raised the issue. In our view, however, the officers' testimony could reasonably be understood as indicating that the officers had not yet decided one way or the other whether they were going to arrest Ms. Gibbs, rather than as indicating that they had definitely decided not to arrest Ms. Gibbs. Second, there is no evidence that the officers had communicated to Ms. Gibbs that they did not intend to arrest her. Third, the officers ultimately did arrest Ms. Gibbs for the POCA offense that was the asserted predicate for the search.

As we view it, the question presented in this case is whether the police lawfully may search a vehicle incident to the arrest of a suspect if, at the time of the search, (1) the police have probable cause to arrest the suspect for an offense; (2) the police have seized the suspect but have not placed the suspect under formal arrest; (3) it is unclear what, if anything, the police have decided with respect to the arrest of the suspect; and (4) the police subsequently do place the suspect under arrest for the offense. *Knowles* does not squarely decide that issue.

Mr. Lewis also relies on this court's decision in *Mitchell v. United States*, 746 A.2d 877, 886 (D.C. 2000) (parking violation would not justify search of car incident to arrest, "given that [the officer] was not purporting to arrest Mr. Mitchell for that infraction"). In *Mitchell*, however, the defendant was never arrested for a parking violation. *Id.* Moreover, such an arrest would have been unlawful, because the parking violation at issue was a civil infraction, and such infractions are handled by way of a notice of infraction, not arrest. *Id.* at 885; 18 DCMR § 2400.6 (1995) (prohibiting parking in no-parking zone); D.C. Code §§ 50-2301.01 (decriminalizing certain traffic offenses), -2302.01 (parking infractions generally must be processed under Subchapter III of Title 50), -2303 (describing notice-of-infraction procedure for parking infractions) (2012 Repl.). In Mr. Lewis's case, in contrast, Ms. Gibbs was ultimately arrested for POCA, and it is undisputed that POCA is a criminal misdemeanor permitting arrest. D.C. Code § 25-1001 (d) (POCA is misdemeanor punishable by $500 fine, 90 days of imprisonment, or both). *Mitchell* thus is not controlling authority in the circumstances of Mr. Lewis's case.

We do, however, find another of our cases controlling: *Millet v. United States*, 977 A.2d 932 (D.C. 2009). In *Millet*, two officers approached a car because

the car had only one functioning headlight. *Id.* at 934. The driver appeared intoxicated, and one officer noticed the odor of burning marijuana coming from the car. *Id.* Both officers noticed an unusual bulge in the waistband of the passenger, Mr. Millet. *Id.* After arresting the driver for driving under the influence, the officers searched the car. *Id.* That search uncovered a bag of marijuana. *Id.* When the officers told the driver and Mr. Millett that they would both be charged with possession of the marijuana in the bag, the driver claimed that the bag belonged to Mr. Millet. *Id.* A search of Mr. Millet's person uncovered additional marijuana, and Mr. Millet was then placed under arrest. *Id.*

On appeal, Mr. Millett challenged the legality of the search of his person, arguing that the search could not be justified as incident to his arrest, because (1) "he had not yet been arrested at the time the search took place"; and (2) "the officers did not intend to arrest him at the time of the search." *Millet*, 977 A.2d at 935. This court disagreed with both arguments. With respect to the first argument, the court held that "[a] search incident to arrest may precede the actual arrest if probable cause exists, independent of the search, to justify the arrest, and if the arrest follows quickly on the heels of the search." *Id.* (internal quotation marks omitted; citing cases, including *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)). With respect to the second argument, the court held that:

> [Mr.] Millet's contention that Officer Roberts searched him illegally because she did not intend to arrest him at that time is without merit. The validity of the search depended not on the officer's subjective motivations, but rather on whether there were objective facts establishing probable cause to believe that [Mr.] Millet had committed or was committing a crime.

*Id.* at 935 n.6 (citing *Whren v. United States*, 517 U.S. 806, 813-15 (1996)).

*Millet* is controlling here. The court there confronted precisely the claim raised by Mr. Lewis -- that a search cannot be incident to an arrest if, at the time of the search, the officers have not yet made an arrest and do not intend to make an arrest. The court disagreed, holding that it did not matter whether the officers intended to make an arrest. *Millet*, 977 A.2d at 935 n.6. *Millet* requires us to reach the same conclusion in Mr. Lewis's case. We therefore hold that the search of the car in Mr. Lewis's case was a lawful incident of the arrest of Ms. Gibbs, even if, at the time of the search, the officers had not yet arrested Ms. Gibbs and did not intend to do so.

We acknowledge that there was evidence in *Millet* that one of the officers had told Mr. Millet and the driver that they both were going to be arrested and charged with possession of marijuana. *Millet*, 977 A.2d at 935. Given that

evidence, the court in *Millet* could perhaps have resolved the issue on factual grounds, by concluding that the officers did in fact intend to arrest Mr. Millet at the time they searched him. But the court did not decide the case on that basis, instead holding as a matter of law that the intent of the officers was irrelevant. *Id.* at 935 n.6. We are bound by that legal ruling. We further acknowledge that the question decided in *Millet* and presented in this case has divided courts around the country. *Compare, e.g.*, *People v. Nguyen*, No. 312319, 2014 WL 2871408 (Mich. Ct. App. June 24, 2014), *with, e.g.*, *State v. Funkhouser*, 782 A.2d 387, 403-09 (Md. Ct. Spec. App. 2001). *Millet*'s discussion of the question is compressed, and more could be said on both sides of the question. Nevertheless, we are bound by our prior holdings even if those holdings are not fully explicated. *Cf. Mullin v. Brown*, 115 P.3d 139, 143 (Ariz. Ct. App. 2005) ("This court may not disregard a clear holding of our supreme court on the purported ground that the analysis supporting it is incomplete.") (internal quotation marks and ellipses omitted). *See generally, e.g.*, *Fogg v. Fidelity Nat'l Title Ins. Co.*, 89 A.3d 510, 515 (D.C. 2014) ("No division of this court will overrule a prior decision of this court.") (internal quotation marks and brackets omitted).

\* \* \*

In sum, we affirm the trial court's suppression order in Mr. Nash's case. We reverse and remand for further proceedings in Mr. Lewis's case.

*So ordered.*