OPINION OF THE COURT
Wachtler, J.
This case involves the elemental question of whether or not the existence of probable cause to arrest justifies a full search where the arrest was not made until one month after the search. Stated differently, the issue before us is whether a warrantless search of the defendant’s person may be conducted solely on the basis of such probable cause. We hold that without a contemporaneous arrest such a warrantless search is violative of constitutional rights.
On October 4, 1974 Deputy Sheriff John Scirri was working as an undercover narcotics agent for the Erie County Sheriff’s Department. At approximately 7:30 p.m. on that evening he was driving his automobile in search of his informant. When he came to the corner of Broadway and Mortimer he noticed a man later identified as the defendant. According to his testimony at trial, Officer Scirri stopped his car at the curb and asked the defendant whether he had seen the informant, "Jack the Ripper” by name. After responding in the negative, the defendant asked the policeman if he was "looking”, meaning looking to buy narcotics. Officer Scirri indicated that he was interested, whereupon the defendant entered the car and asked the officer how many he wanted. Deputy Scirri countered by asking how many he had. The defendant stated that he had as many as Officer Scirri wanted. When the policeman asked for two, the defendant pulled two bags from a tinfoil containing bags of heroin. Deputy Scirri testified that he paid *163 $30 which the defendant placed in his right , pants pocket. In response to a question the defendant stated he was called "George” and alighted from the car. The entire meeting lasted approximately five minutes.
The police officer drove away and contacted his superior by radio, arranging to meet in a nearby parking lot. A few minutes later Officer Scirri met with Sergeant Guadagno and the undercover officer presented his buy which a field test established to be heroin. At this meeting Deputy Scirri discussed the purchase with Sergeant Guadagno and described "George” as a dark complected male, approximately 28 years old, who was about six-one, had a large build with a round face and a short bush hair style. He also informed the sergeant that "George” was wearing a light brown fur coat reaching below the knees with black pants and black suit underneath.
Sergeant Guadagno testified that after this meeting he proceeded in his patrol car to the vicinity of the buy in search of "George”. At Broadway and Jefferson, the sergeant spotted a man who fit the general description given by Deputy Scirri. After a cursory check of the street revealed no one else fitting that description, Sergeant Guadagno slowly turned the corner and followed behind the defendant along the curb lane as he walked up Broadway toward Mortimer. When Evans reached the corner he turned completely around with his arms outstretched. At this point Sergeant Guadagno emerged from the patrol car, identified himself and ordered the defendant to put his hands on the hood of the car which he did. Sergeant Guadagno then conducted a pat down frisk. Finding no weapons, the policeman asked for identification and told the defendant to empty his pockets on the hood. The defendant had no identification but stated that his name was Linsay Evans and gave his date of birth. Sergeant Guadagno further testified that when the defendant emptied his personal possessions on the hood the "first thing to come out of his right pocket was three ten dollar bills.” The sergeant completely searched the defendant at this point and found neither heroin nor the tinfoil that Officer Scirri had described. After a warrant check proved negative the defendant was permitted to continue on his way.
At trial, defense counsel objected to Sergeant Guadagno’s testimony relating to the search of the defendant and the three $10 bills taken from his pocket. The Trial Judge over *164 ruled the objections stating that Sergeant Guadagno had reasonable cause to search the defendant for contraband in view of the testimony that the defendant had taken the two glassine envelopes sold to Deputy Scirri from another envelope.
In further testimony Sergeant Guadagno indicated that about one month after the street encounter Allen Evans was arrested and charged with the sale and possession of heroin. The trial culminated in the jury finding the defendant guilty of selling heroin.
Among the issues raised on appeal was the illegality of Sergeant Guadagno’s search. The People argued that the search was valid as incident to arrest. The Appellate Division, by a divided court, affirmed. The majority held that the street search of the defendant was justified by the existence of probable cause to seize and search for the possession of narcotics. They believed that the postponement of the intrusion of formal arrest for a month in order to conceal the true identity of the undercover officer was a reasonable police practice which constitutionally justified the search. While we cannot and do not take issue with the laudable objective of protecting the safety of undercover agents, we cannot accept the conclusion reached below and reverse.
Recently, our court has had occasion to consider in great depth the many facets of police-citizen encounters. (E.g., People v Cantor, 36 NY2d 106; People v Ingle, 36 NY2d 413; People v De Bour, 40 NY2d 210; People v Stewart, 41 NY2d 65.) In these decisions we have articulated a carefully demarcated body of law explaining the varying predicates necessary to justify police intrustions ranging from the right to arrest to the right to stop and frisk, to the common-law power to inquire, to the. authority to approach and request information. The common thread throughout these opinions is that for a police intrusion to be permissible it must be predicated on constitutionally cognizable factors. In most of these cases the permissible scope of intrusion was justified substantially by the need to ensure the personal safety of the policemen involved.
Applying these principles to the case at bar, we note that, given the level of knowledge here, Sergeant Guadagno was justified in frisking the defendant when he encountered him on the street. Having reasonably assured his safety, however, it does not follow that the existence of probable *165 cause to arrest justified a full search. We believe that at this point the defendant’s indefeasible right to personal security outweighs any State interest in conducting what amounted to an exploratory search of his person.
It is true that Sergeant Guadagno could have arrested the defendant Evans (CPL 140.10; United States v Watson, 423 US 411) and, in the course of subjecting him to the physical dominion of the State, he could have searched him incidental to the arrest. (People v Chiagles, 237 NY 193; Chimel v California, 395 US 752; Weeks v United States, 232 US 383). The justifications for a search incident to arrest are obvious and derive from the necessity to ensure the safety of the officer and to deprive the arrestee of any potential means of escape or of the ability to destroy evidence of a crime. But the simple fact that he did not arrest the defendant prevents the justifications from coming into being.
To adopt the proposition that the search was valid because there was probable cause to arrest puts the cart before the horse. An arrest is an essential requisite to a search incident, otherwise once probable cause existed a potential arrestee would be fair game for any intrusions the police deem appropriate for however long they allow him to remain at large. While it has been consistently held that there is no constitutional right to be arrested (United States v Lovasco, 431 US 783; United States v Marion, 404 US 307; Hoffa v United States, 385 US 293, 310), the police may not utilize the existence of probable cause as a trump card to justify warrantless personal searches. Unless and until a person is arrested, a full body search without a warrant or exceptional circumstances is constitutionally unreasonable.
The People contend that the instant search is justifiable by virtue of the overriding interest the State has in preserving the undercover status of the buyer. Although we believe that it may be a legitimate police practice to postpone arrests in narcotics cases so that the undercover officer may pursue his work, it is a dangerous non sequitur to conclude that constitutional rights should be diminished as a result. The State cannot have it both ways, they must choose. Here the police made a deliberate choice that the cover was more important than the immediate arrest of the defendant and they must be bound by that choice.
We reiterate that an essential requisite to a search incident to arrest is that the arrest be lawful and the search be *166 contemporaneous with the arrest. Just as Chimel (supra), stands for the principle that there must be unity of place to justify an incidental search, our holding today requires that the validity of a search incident to arrest depends also on unity of time.
It may be said that the search and arrest must constitute a single res gestae. The fact that the search precedes the formal arrest is irrelevant as long as the search and arrest are nearly simultaneous so as to constitute one event. As Justice Warren noted in Peters v New York, decided with Sibron v New York (392 US 40, 67) although the formal arrest followed the search, "for purposes of constitutional justification”, the arrest was effected when the policeman took the burglar, Peters, into custody on the stairwell (emphasis added). At that poiht, the necessity of protecting the safety of the officer and preventing potential escape or destruction of evidence became a constitutionally cognizable concern, thereby legitimatizing the search.
A fair reading of the cases cited by the majority below supports our holding. In all of those cases the search and arrest occurred almost simultaneously so that they may be viewed as a single transaction. In United States v Riggs (474 F2d 699, cert den 414 US 820), the search of the defendant was upheld where the formal arrest was made several minutes later when the white powder she was carrying proved, on chemical analysis, to be heroin. The Eighth Circuit in United States v Skinner (412 F2d 98, cert den 396 US 967), sustained as incident to arrest a search predicated on probable cause where the officer did not actually inform the defendant that he was under arrest until he found bullets on his person. Where the arrest and search occur contemporaneously search incident to arrest reasoning will prevail. In contrast, where the arrest and search are distinct occurrences, as here, the search will be declared invalid.
Nor does the holding of Cupp v Murphy (412 US 291), compel a different result. There, the defendant voluntarily appeared at the police station for questioning concerning the strangulation death of his wife and was subjected to a very limited search by virtue of scraping particles of dried blood from under his fingernails. Although the defendant was not arrested for another month, the United States Supreme Court found the search constitutionally permissible. The determinative factor was the "highly evanescent” nature of the evidence *167 (412 US, p 296). The conclusory statement that heroin is an easily destroyed commodity should not be determinative. For the Cupp rationale to apply, the intrusion must be limited and the evidence must be in imminent danger of physical dissipation (see, also, Schmerber v California, 384 US 757). Under those circumstances, the perishable nature of the object sought might be validly considered an exigent circumstance. That reasoning is inapposite in the instant case.
 As we held in People v Crimmins (36 NY2d 230, 237), any error of constitutional magnitude requires reversal unless it can be said beyond a reasonable doubt that the error did not contribute to the conviction. We conclude that the admission of Sergeant Guadagno’s testimony relating the discovery of three $10 bills constitutes reversible error. This evidence corroborated Deputy Scirri’s testimony in two important respects and was relied on by the People in summation. Consequently, the judgment of conviction should be reversed and the matter remanded.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order reversed and a new trial ordered.