[957 NYS2d 332]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GRAHAM REID, Appellant.

First Department, January 3, 2013

### APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society,* New York City (*Allen S. Axelrod* of counsel) and *Davis Polk & Wardwell LLP,* New York City (*Marc J. Tobak, Antonio J. Perez-Marquez* and *Heidi E. Reiner* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney,* New York City (*Sean T. Masson* and *Richard Nahas* of counsel), for respondent.

### OPINION OF THE COURT

Saxe, J.

This appeal addresses whether suppression should have been granted where the police stopped defendant's car for a traffic infraction, and, based on what the arresting officer heard and observed, defendant was asked to exit the car and was patted down; he was placed under arrest only after a knife was found in his pocket. Because the arresting officer candidly admitted that he had not intended to arrest the driver before discovering the knife, defendant contends that the officer lacked the requisite predicate for the search and that therefore we must suppress the knife and other fruits of the search that followed. We disagree.

The arresting officer's factual testimony, which the court properly found to be credible, established that the necessary predicate existed for each step taken by the officer. Because, like the hearing court, we find that at the time of the pat down the officer actually had probable cause to arrest defendant for driving while intoxicated, the search was permissible and the fruits of the resulting full search were admissible. While we rely on the factual testimony of the arresting officer, we are not bound by his subjective assessment at the time regarding the nature and extent of his authority to act.

Police Officer Jacob Merino testified that in the early morning of February 15, 2009, he and a partner were patrolling in an

unmarked car when, at approximately 5:40 a.m., he observed defendant's car as it traveled west on 125th Street, crossing the double solid yellow lines into the oncoming traffic lane and swerving in and out of the lane without signaling. He continued to observe defendant's car for approximately 10 minutes before pulling it over after it made a right turn onto 12th Avenue without signaling.

After defendant pulled to the curb, Officer Merino approached the driver's side of the car. He observed two plastic cups in the center console, and two passengers in the car, one in the front passenger seat, and one in the back seat. Defendant's eyes appeared to be watery, his clothing was disheveled, and Merino said that the car smelled of alcohol.

Merino asked defendant for his license and registration. While defendant was still in the car, Merino asked where he was coming from and where he was going, and defendant answered that he was driving his two passengers home. When Merino asked defendant whether he had been drinking, defendant answered that he had had a beer after getting off from work. When asked when that was, defendant said approximately 4:00 p.m., which reply seemed odd to Merino since that was approximately 13 hours earlier.

Merino then asked defendant to get out of the car. As defendant complied with this direction, Merino asked him whether he had any weapons on him, "anything that he could hurt himself with or me." After defendant denied having any weapons, Merino patted him down. He felt a hard object in defendant's pocket, reached into the pocket and pulled out a switchblade knife. Merino acknowledged that he placed defendant under arrest at that time only because he found the switchblade, and that he had not been planning to arrest defendant when he directed him to step out of the car and patted him down.

Merino's factual testimony, which the hearing court found credible, establishes the propriety of the initial stop, based on defendant's erratic driving and traffic law violations. His additional observations outside of defendant's stopped car—the two plastic cups in the center console, the smell of an alcoholic beverage, defendant's watery eyes and disheveled clothing, and defendant's odd response to the question of whether he had been drinking—were sufficient to create probable cause that defendant had been driving while intoxicated.

This probable cause to arrest defendant for driving while intoxicated existed regardless of whether, at the moment of

searching defendant, Merino intended to make an arrest on those grounds. "In determining whether probable cause exists, an 'objective judicial determination of the facts in existence and known to the officer' prevails over the officer's 'subjective evaluation' " (*People v Robinson*, 271 AD2d 17, 24 [1st Dept 2000], *affd* 97 NY2d 341 [2001]).

In *People v Rodriguez* (84 AD3d 500 [1st Dept 2011], *lv denied* 17 NY3d 861 [2011]), a detective investigating a murder came upon the defendant, whom he suspected of some connection to the murder, in unlawful possession of marijuana. Because the officer had probable cause for the marijuana possession arrest he made, it was irrelevant whether the arrest was motivated by the desire to obtain evidence relating to the homicide. This Court explained that "[a]n 'arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause,' and 'his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause' " (*id.* at 501, quoting *Devenpeck v Alford*, 543 US 146, 153 [2004]).

In *Devenpeck*, the Supreme Court considered *and rejected* a rule applied by the Ninth Circuit, requiring that for a warrantless arrest to be proper, not only must there be probable cause to believe that a crime has been committed, but "the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest" (543 US at 153). The Supreme Court explained that the "[s]ubjective intent of the arresting officer, *however* it is determined . . . , is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest" (*id.* at 154-155).

Under the rule stated in *Rodriguez* and *Devenpeck*, we conclude that, even if the police are incorrect in their assessment of the particular crime that gives them grounds to conduct the search, or if they incorrectly assess the level of police activity that is justified by their knowledge, where the facts create probable cause to arrest, a search must be permissible.

We reject defendant's suggestion that this case is governed by the principle that a search is not a valid search incident to arrest where the fruits of the search constitute the probable cause for the arrest itself (*see Johnson v United States*, 333 US 10, 16-17 [1948]). The cases he cites involve circumstances in which there was no probable cause at all before the challenged search

has concluded. Defendant's analysis would be correct if the facts known to Officer Merino before the search failed to provide any legal justification authorizing the search. However, that is not the situation here.

The circumstances presented in *People v Evans* (43 NY2d 160 [1977]) are distinguishable from those presented here, and the rule pronounced there is therefore inapposite here. In *Evans*, although the police had probable cause to arrest the defendant when they stopped and searched him, they did not arrest him at that time. The Court held that even if the police have probable cause to arrest a defendant, they may not conduct a search incident to an arrest where they do not make the arrest to which the search was purportedly incident. It explained, "To adopt the proposition that the search was valid because there was probable cause to arrest puts the cart before the horse. An arrest is an essential requisite to a search incident" (*id.* at 165). The *Evans* Court was concerned about the possibility that the police, having probable cause to arrest a suspect, might instead engage in abusive practices toward the suspect while allowing him to remain at large. Those concerns are inapplicable to the present case.

Those cases using the "one event" or "res gestae" analysis to uphold searches that immediately precede an arrest as long as they are "nearly simultaneous so as to constitute one event" (*id.* at 166) are of limited value as applied here. Such cases routinely refer to the arrest as "the formal arrest," indicating that at the time of the search the police already understood that they had grounds for the arrest (*see e.g. People v Charles*, 222 AD2d 688 [2d Dept 1995], *lv denied* 87 NY2d 971 [1996]). For instance, in *People v Valenzuela* (226 AD2d 154 [1st Dept 1996], *lv denied* 88 NY2d 1072 [1996]), the police stopped the defendant and an accomplice, who closely matched the description of two men who had committed a robbery, moments after the crime took place and 1½ blocks away, making the order of the search and the "formal arrest" immaterial (*id.* at 155). Here, by contrast, from the point of view of the police at the time, the arrest was not merely a formality that they happened to leave until after the search.

If the police had lacked probable cause to arrest defendant for driving while intoxicated, then the arrest would have been impermissible because the remaining facts would not have provided grounds for the search that disclosed the knife. Although "[u]pon making [a] valid traffic stop, the police [have]

discretion to order the occupants to exit the vehicle" (*see People v Grant*, 83 AD3d 862, 863 [2d Dept 2011], *lv denied* 17 NY3d 795 [2011]), that authority does not automatically include frisks; rather, before a pat-down search is performed, "[t]he officer must have knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is armed or poses a threat to safety" (*see People v Batista*, 88 NY2d 650, 654 [1996]).

> "Relevant considerations in the determination of whether there is reasonable suspicion that the suspect poses a danger include, among others, the substance and reliability of the report that brought the officers to the scene, the nature of the crime that the police are investigating, the suspect's behavior and the shape, size, and location of any bulges in the suspect's clothing" (*see People v Shuler*, 98 AD3d 695, 696 [2d Dept 2012]).

A traffic stop alone does not provide authorization for frisking the driver, and the information possessed by Officer Merino did not supply a reasonable basis for suspecting that the driver was armed and might be dangerous. However, his search of defendant was permissible because at the time of the search probable cause existed to arrest defendant for driving while intoxicated. Because our determination of the permissible police conduct derives from the facts, rather than from the arresting officer's beliefs as to what steps are authorized by those facts (*see Rodriguez*, 84 AD3d at 501), the initial search that disclosed the knife was justified, as was the ensuing full search incident to arrest.

Accordingly, the judgment of the Supreme Court, New York County (Arlene D. Goldberg, J.), rendered March 4, 2010, as amended March 18, 2010, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree, and sentencing him, as a second felony offender, to a term of 2 to 4 years, should be affirmed.

SWEENY, J.P., MOSKOWITZ, RENWICK and ABDUS-SALAAM, JJ., concur.

Judgment, Supreme Court, New York County, rendered March 4, 2010, as amended March 18, 2010, affirmed.