BECKWITH, Associate Judge,
dissenting.
After pulling over appellant Thomas Butler for having broken brake lights, a police officer stepped Mr. Butler out of the car and promptly “started conducting a search” of him from shoulder to toe “[b]e-cause of the odor of marijuana coming from the vehicle.” On appeal from his convictions for possessing the drugs that police found in Mr. Butler’s shoe, Mr. Butler argues (in addition to contending that police had no probable cause to arrest) that the officer conducted “a simple evi-dentiary search, unconnected to an arrest” when the officer searched his person, and that the government cannot justify this search under the exception to the Fourth Amendment’s warrant requirement upon which it relies — that for searches incident to lawful arrest.
In that vein, the majority states, and I agree, that “our case law does not approve — and indeed actively guards against — ‘fishing expeditions’ for contraband.” Ante at 739 n. 6. Yet in the next sentence, the majority expresses agreement with the seemingly opposite conclusion, recently drawn by another panel of this court, that “a search incident to arrest is lawful even if, at the time of the search, the police had not yet arrested the suspect and did not subjectively intend to do so.” Ante at 739 n. 6 (emphasis added) (citing United States v. Nash, 100 A.3d 157 (D.C.2014)). Such a conclusion flatly defies the U.S. Supreme Court’s Fourth Amendment jurisprudence, including precedent, such as Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), in which the fact that an officer did not intend to arrest a suspect was what made a purported search incident to arrest illegal. See id. at 117, 119 S.Ct. 484
In the search-incident-to-arrest context, the Supreme Court has guarded against such investigatory searches by insisting on the “fact” of an arrest. Knowles, 525 U.S. at 117, 119 S.Ct. 484 (quoting United States v. Robinson, 414 U.S. 218, 234 n. 5, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). In this case, where the arresting officer testified that he “just directly went looking for marijuana” after smelling marijuana and getting Mr. Butler out of the car, I would reverse Mr. Butler’s convictions on the ground that the search of his person was not incident to any arrest. That is, the record is devoid of signs that the officer was arresting Mr. Butler for possession of marijuana when he conducted the search *743 and instead indicates that he was conducting an investigative search not incident to any arrest.
Supreme Court case law establishes that under the search-incident-to-arrest exception to the warrant requirement, the government needs more than just probable cause to arrest. It needs an arrest. In the foundational search-incident-to-arrest case of Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court found it “reasonable for the arresting officer to search the person arrested” for two reasons: “to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape” and “to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction.” Four years later in Robinson, 414 U.S. at 235, 94 S.Ct. 467, the Supreme Court clarified that “[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.” That is because “it is the fact of custodial arrest which gives rise to the authority to search,” id. at 236, 94 S.Ct. 467,[1] and “[i]t is scarcely open to doubt that the danger to an officer is far greater in the case of the extended exposure which follows the taking of a suspect into custody and transporting him to the police station than in the case of the relatively fleeting contact resulting from the typical Terry-type stop.” Id. at 234-35, 94 S.Ct. 467.[2]
In Knowles v. Iowa, 525 U.S. at 118-19, 119 S.Ct. 484, the Supreme Court unanimously reaffirmed Robinson’s reasoning and declined to “extend” Robinson’s “bright-line rule” to searches incident to a non-arrest. In Knowles, a police officer stopped Patrick Knowles for speeding. Iowa law permitted the officer either to arrest Mr. Knowles or to issue him a citation, and the officer followed “the far more usual practice of issuing a citation,” and then, as allowed under Iowa law, searched the car “incident to citation,” finding drugs and drug paraphernalia. Id. at 115, 119 S.Ct. 484. The Iowa Supreme Court affirmed Mr. Knowles’s convictions, “reasoning that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been a custodial arrest.” Id. at 115-16, 119 S.Ct. *744 484. Rejecting this position, the U.S. Supreme Court insisted on the “fact” of arrest, “recognizing] that ‘[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest.’” Id. at 117, 119 S.Ct. 484 (quoting Robinson, 414 U.S. at 234 n. 5, 94 S.Ct. 467). “The threat to officer safety from issuing a traffic citation,” the Court explained, “is a good deal less than in the case of a custodial arrest.”[3] Id. Under Knowles, then, the search-incident-to-arrest exception is rooted in the existence of an arrest — in Robinson’s phrasing, “the fact of custodial arrest,” 414 U.S. at 236, 94 S.Ct. 494 — not in the existence of probable cause to arrest. See also Inre J.O.R., 820 A.2d 546, 547-48 (D.C.2003) (upholding the search of J.O.R.’s coat pockets as “valid under Robinson,” even though police were taking J.O.R. into custody under a neglect order and not for a crime, because the danger to police officers “flows from their prolonged exposure ... while taking the person into custody and transporting him, and not from the ground for the arrest”).
In this case, the government cannot reconcile with Knowles and Robinson its assertion that “[b]ecause there was probable cause to arrest appellant, Officer Boar-man’s search was lawful.”[4] Rather than being “incident to” Mr. Butler’s later arrest, the officer’s search of Mr. Butler had all the hallmarks of a warrantless investigative search,[5] which is just how the officer characterized it. Officer Boarman “just directly went looking for marijuana” after getting Mr. Butler out of the car, and when the prosecutor asked him to explain why he started to search Mr. Butler, he responded that he did so “[b]ecause of the odor of marijuana coming from the vehicle.” That Officer Boarman acknowledged that the clothing of a person in the presence of marijuana might come to smell like marijuana also is at odds with the government’s suggestion that the police were determined, pre-search, to arrest Mr. Butler based on the smell of marijuana. And a second search Officer Boarman described — a search during which the officer “did eventually take [Mr. Butler’s] shoes off on the scene, to just make sure there was no more narcotics shoved down in his shoes” — looks like a classic Chimel-style *745 search incident to arrest, in contrast to the initial search that yielded the drugs.
The government correctly notes that a valid search incident to arrest may at times precede the actual arrest. In Rawlings v. Kentucky, 448 U.S. 98, 111, 100 5.Ct. 2556, 65 L.Ed.2d 683 (1980), the Supreme Court held that “[w]here the formal arrest followed quickly on the heels of the challenged search of petitioner’s person,” it was not “particularly important that the search preceded the arrest rather than vice versa.”[6]
Mr. Rawlings had received Miranda warnings and then confessed to possessing drugs found in his companion’s purse. Id. at 100-01,100 S.Ct. 2556. The police, who by that point had detained Mr. Rawlings for 45 minutes, searched his person and “then placed [him] under formal arrest.” Id. at 101, 100 S.Ct. 2556. Unlike Mr. Butler’s arrest, Mr. Rawlings’s arrest was already in the works at the time of the search, and only his “formal arrest” followed. Id. at 111, 100 S.Ct. 2556; see also State v. Funkhouser, 140 Md.App. 696, 782 A.2d 387, 408 (2001) (seeking “an arrest already in motion”). The Rawlings Court cited Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), where, as the Court explained, “the police had probable cause to make an arrest” at the time of the challenged search, 412 U.S. at 293, 93 S.Ct. 2000, but did not arrest the suspect until a month later. The Court upheld a “very limited search necessary to preserve the highly evanescent evidence,” id. at 296, 93 S.Ct. 2000 — dried blood under a murder suspect’s fingernails that he was scratching off[7] — but cautioned that “we do not hold that a full Chimel search would have been justified in this case without a formal arrest and without a warrant.” Id. at 296, 93 S.Ct. 2000. Cupp, like Knowles, indicates that for police to search incident to arrest, it is not enough for the suspect merely to be “arrestable.”[8]
*746 Rescinding this historical rule turns the search-incident-to-arrest exception into a search-incident-to-probable-cause-to-arrest exception, disregarding the Supreme Court’s repeated pronouncements describing warrant exceptions as “specifically established,” “well delineated,” and “jealously and carefully drawn.” Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (internal quotation marks and citations omitted). It also expands police authority to perform investigative searches.[9]
Given the Supreme Court’s precedent, I would not interpret either of two statements in our prior decision in Millet v. United States, 977 A.2d 932 (D.C.2009)— specifically, (1) that “[t]he validity of the search depended not on the officer’s subjective motivations, but rather on whether there were objective facts establishing probable cause to believe that Millet had committed or was committing a crime,” id. at 937 n. 6; or (2) that “the fact that the police searched Millet before formally placing him under arrest did not require the court to suppress the fruits of the search if the officers had probable cause to arrest him independent of the search itself,” id. at 935-36 — to mean that the government need only show probable cause to arrest, and not also an actual arrest to which the search was “incident,” to justify the warrantless search. As the majority notes, however, this court recently determined, in a case that arose on a government appeal after Mr. Butler’s case was argued, that a purported holding in a footnote in Millet compelled it to reach just such a result, in direct tension, in my view, with Knowles’s core holding that a valid search incident to arrest requires not just probable cause to arrest, but an actual arrest. See United States v. Nash, supra, 100 A.3d 157 (D.C.2014). The panel in Nash faced a claim that a search of a car was not a lawful search incident to arrest because, at the time of the search, the police had no intention of making an arrest.[10] Nash, 100 A.3d at 168. Concluding that “Millet is controlling here,” the Nash court held that “the search of [appellant’s car] was a lawful incident of the arrest of [the passenger], even if, at the time of the search, the officers had not yet arrested *747 [the passenger] and did not intend to do so.” Nash, 100 A.3d at 168.
Millet cannot have intended a holding that so offhandedly brings such a fundamental change to the law governing the search-incident-to-arrest exception to the warrant requirement. The court in Nash acknowledged that “Millet’s discussion of the question is compressed,” that “more could be said on both sides of the question,” and that the question “has divided courts around the country.” Id. at 168. Indeed, Millet dealt only in passing with the appellant’s claim that the officer “searched him illegally because she did not intend to arrest him at that time,” calling it “without merit” and easily disposing of it in a footnote. Millet, 977 A.2d at 937 n. 6. This was primarily on factual rather than legal grounds, moreover, because, at the time of the search, the officer already had legally found a bag containing marijuana in the car, had arrested the driver, Mr. Fountain, for driving under the influence of marijuana, and had “told Millet and Fountain that they would both be charged in connection with the marijuana found in the bag.” Id. at 934. It was clear enough that Mr. Millet would be arrested and that the search was incident to arrest, and therefore this court devoted its analysis to whether the arrest was lawful — that is, whether the police officers had probable cause, at the time of the search, to arrest — and ultimately decided that they did.[11] This explains the court’s statement, now understood in context, that the search was valid “if the officers had probable cause to arrest him independent of the search itself.” Millet, 977 A.2d at 935-36.
Nash’s reading of Millet is tough to reconcile with Chimel and its progeny. In essentially making probable cause to arrest enough to justify a search under the search-incident-to-arrest exception, it transforms the search-incident-to-arrest exception into an “arrestable” exception— precisely the transformation that Robinson and Knowles guard against.[12]
Because the record in this case signals that the officer’s discovery of drugs in Mr. Butler’s shoe “was the precipitating or catalytic agent” for his arrest and there was “no suggestion that [Mr. Butler] was going to be arrested regardless of what the *748 search ... revealed,” Funkhouser, 782 A.2d at 408, this search was unconstitutional because police did not conduct the search incident to Mr. Butler’s arrest.

. The Robinson Court identified an additional reason — the unique intrusiveness of arrests— for linking searches incident to arrest to the actual fact of arrest: "An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons .... An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society’s interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.” Robinson, 414 U.S. at 228, 94 S.Ct. 467 (quoting Terry, 392 U.S. at 26, 88 S.Ct. 1868). Thus the Robinson Court located the pivotal Fourth Amendment moment in the arrest itself, not its incidental search: "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.” Id. at 235, 94 S.Ct. 467.

. See also Washington v. Chrisman, 455 U.S. 1, 7, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982) ("Every arrest must be presumed to present a risk of danger to the arresting officer.”); Cupp v. Murphy, 412 U.S. 291, 296, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) ("Where there is no formal arrest, as in the case before us, a person might well be less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating evidence on his person."); Holt v. United States, 675 A.2d 474, 481 (D.C.1996).

. The Supreme Court affirmed this reasoning in Virginia v. Moore, 553 U.S. 164, 177, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008), stating that a search incident to arrest "enables officers to safeguard evidence, and, most critically, to ensure their safety during 'the extended exposure which follows the taking of a suspect into custody and transporting him to the police station,’ ” id. (quoting Robinson, 414 U.S. at 234-35, 94 S.Ct. 467), and further stating that because "[o]fficers issuing citations do not face the same danger,” under Knowles, "they do not have the same authority to search,” id.

. The government bears the burden to justify the search "based on facts that could bring it within certain recognized, limited exceptions to the warrant requirement.” Bennett v. United States, 26 A.3d 745, 751 (D.C.2011) (internal quotation marks and citation omitted).

.This case thus differs from previous cases upholding searches as incident to lawful arrest. See, e.g., Prince v. United States, 825 A.2d 928, 930 (D.C.2003) (pre-search, officer felt "the texture of the marijuana" in appellant’s pocket during Terry frisk); Hill v. United States, 627 A.2d 975, 978 (D.C.1993) (pre-search, "Hill was not merely ‘detained’ but had actually been ‘seized’ and was under arrest”); Irby v. United States, 342 A.2d 33, 37 (D.C.1975) (pre-search, appellants were "effectively under arrest when they were ordered from the car at gunpoint,” after officers had seen "reported proceeds of the robbery” in plain view). See also the discussion infra of Millet v. United States, 977 A.2d 932, 934 (D.C.2009) (pre-search, officer "told Millet and Fountain that they would both be charged in connection with the marijuana found in the bag”).

. See Anderson v. State, 78 Md.App. 471, 553 A.2d 1296, 1301 (1989) ("There will be occasions when the arresting officer deems it tactically unwise to lose critical seconds or even to be momentarily distracted from his overriding necessity of 'beating his opponent to the draw.’ Under the circumstances, it would exalt form over substance to the point of absurdity to insist that an officer clap his hand upon an arrestee’s shoulder and say the operative words, 'You are under arrest,’ before disarming and/or neutralizing a potentially dangerous target.”).

. In Cupp, when the suspect refused to give a sample and then attempted to destroy the blood, the police scraped his fingernails without his consent or a warrant. 412 U.S. at 292-94, 93 S.Ct. 2000. The Court has since understood Cupp as a case involving the "imminent destruction of evidence,” consistent with the view that probable cause to arrest does not entitle police to search without an arrest or some additional exigency. See Missouri v. McNeely, - U.S. -, 133 S.Ct. 1552, 1559, 185 L.Ed.2d 696 (2013).

.For state court holdings that, like Knowles v. Iowa, reject the "reasoning that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been a custodial arrest," 525 U.S. at 115-16, 119 S.Ct. 484, see Commonwealth v. Craan, 13 N.E.3d 569, 469 Mass. 24 (Mass.2014) ("Where no arrest is underway, the rationales underlying the exception do not apply with equal force.Given that it lacked the critical element of an arrest, the search of the defendant’s vehicle cannot be sustained as a search incident to arrest.”); Commonwealth v. Washington, 449 Mass. 476, 869 N.E.2d 605, 611-12 (2007) ("To permit a search incident to arrest where the suspect is not arrested until much later, or is never arrested, would sever this exception completely from its justifications” and "would, in effect, create a wholly new exception for a ' ‘search incident to probable cause to arrest.’ This we decline to do.”); Belote v. State, 411 Md. 104, 981 A.2d 1247, 1252 (2009) ("[T]he fact that a police officer conducts a Terry stop and has probable cause, without more, is not sufficient to give rise to a custodial arrest,” so as to trigger the search-incident-to-arrest ex *746 ception.); People v. Evans, 43 N.Y.2d 160, 400 N.Y.S.2d 810, 371 N.E.2d 528, 531 (1977) (‘‘[T]he police may not utilize the existence of probable cause as a trump card to justify warrantless personal searches. Unless and until a person is arrested, a full body search without a warrant or exceptional circumstances is constitutionally unreasonable.”); State v. Ingram, 331 S.W.3d 746, 758 (Tenn.2011) ("It is not sufficient that an arrest could have been made; the arrest must have been made roughly contemporaneously to the search in order for it to justify the search as incident to an arrest.”); Lovelace v. Commonwealth, 258 Va. 588, 522 S.E.2d 856, 860 (1999) (rejecting "the Commonwealth’s argument that the existence of probable cause to charge Lovelace with drinking an alcoholic beverage in public allowed Womack to search him”); State v. O’Neill, 148 Wash.2d 564, 62 P.3d 489, 501 (2003) (stating, in state constitutional holding, that "it is the arrest, not probable cause to arrest, that constitutes the necessary authority of law for a search incident to arrest”).

. See Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (permitting police to arrest for "even a very minor criminal offense” such as not buckling up).

. Referring to Millet, Nash stated that "[tjhe court there confronted precisely the claim raised by [appellant] — that a search cannot be incident to an arrest if, at the time of the search, the officers have not yet made an arrest and do not intend to make an arrest. The court disagreed, holding that it did not matter whether the officers intended to make an arrest. Millet requires us to reach the same conclusion in [appellant's] case.” Id. at 168.

. See United States v. Debruhl, 38 A.3d 293, 298 (D.C.2012) (noting that “stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question” (quoting Murphy v. McCloud, 650 A.2d 202, 205 (D.C.1994))).

. The Nash decision does not directly state that probable cause to arrest is sufficient to justify a search under the search-incident-to-arrest exception, but instead framed the question before it in terms of the following four components: "As we view it, the question presented in this case is whether the police lawfully may search a vehicle incident to the arrest of a suspect if, at the time of the search, (1) the police have probable cause to arrest the suspect for an offense; (2) the police have seized the suspect but have not placed the suspect under formal arrest; (3) it is unclear what, if anything, the police have decided with respect to the arrest of the suspect; and (4) the police subsequently do place the suspect under arrest for the offense.” Nash, 100 A.3d at 167. The last three parts — that the police have not yet arrested the suspect, have not yet decided to arrest the suspect, and, following the search, do arrest the suspect— add little to this equation, however. Nash emphasizes that Knowles was factually different because the officer there admitted that he had decided not to arrest the suspect before conducting the search, while in Nash, the police officer’s intent was uncertain. See Nash, 100 A.3d at 166, 166-67. Yet authorizing such a search — purportedly made "incident to arrest” — because the police officer has not made a decision whether to arrest would seem to legitimize the sort of plainly investigative searches that the majority here acknowledges run afoul of the Fourth Amendment.