Opinion for the court by
Associate Judge MCLEESE,
joined by GLICKMAN, FISHER, BLACKBURNE-RIGSBY, and THOMPSON, Associate Judges.
Dissenting opinion by Associate Judge BECKWITH, joined by WASHINGTON, Chief Judge, and EASTERLY, Associate Judge, at page 251.
MCLEESE, Associate Judge:
The United States seeks review of the trial court’s pretrial order suppressing evidence as fruit of an unlawful search under the Fourth Amendment. D.C. Code § 23-104 (a)(1) (2012 Repl.). We reverse and remand for further proceedings.
I.
The evidence presented at the suppression hearing indicated the following. At approximately 2 a.m. on June 16, 2013, United States Park Police Officer Michael Alto was driving on Ingraham Street NW when he saw appellee David Lewis driving a car with a non-functioning headlight. While following the car, Officer Alto determined that the car was registered to Mr. Lewis and that Mr. Lewis had a suspended license. Mr. Lewis drove a couple of blocks, pulled over into a parking spot, and *238 started to get out of the car. Officer Alto pulled up and asked Mr. Lewis for his license and registration. Mr. Lewis opened the car door, enabling Officer Alto to see an open bottle of Patrón tequila in the center-console cup holder. The bottle was half full. Mr. Lewis’s passenger, Brittney Gibbs, said that the bottle was hers. Officer Alto told Ms. Gibbs to bring him the bottle, which Ms.. Gibbs did by walking around the car and handing the bottle to Officer Alto.
After confirming-.that Mr. Lewis’s license had been suspended, Officer-Alto put Mr. Lewis in handcuffs. Officer Alto did not- smell any alcohol coming from Mr. Lewis or Ms. Gibbs. A second officer, Officer Brown, arrived on the scene, and Officer Alto asked her to search the car for additional open containers of alcohol. In Officer Alto’s experience, “the majority of times when there is a tequila or liquor type of beverage in a vehicle, they’ll be drinking through cups.” Similarly, in Officer Brown’s experience, people very rarely drink directly out of Patrón bottles and instead usually use cups. The officers decided to search the car, both for additional evidence'of the offense of "possession of an open container of alcohol (POCA) and because it was possible that Ms. Gibbs could have been permitted to drive the car away afterward, and the officers therefore wanted to make sure that there was no additional alcohol or other contraband in the vehicle.
. At the time Officer Brown arrived, Ms. Gibbs was outside the vehicle, saying that she needed to go to the bathroom. Officer Brown told Ms. Gibbs that she could not leave. Officer Brown opened the driver-side door and-smelled marijuana. Officer Brown found a cup containing liquid that smelled like alcohol on the floor of the front passenger seat, and Ms. Gibbs said that the cup was hers. Officer Brown also found a loaded handgun and a box of ammunition in a bag on the back seat. Finally, Officer Brown found a cigarette containing a green plant-like substance in the passenger-side door.
According to Officer Brown, Ms. Gibbs was not under arrest at the time the search of the car began. Once Officer Brown found the gun, she placed Ms. Gibbs in handcuffs. A subsequent search revealed a bag of marijuana in Ms. Gibbs’s bra. Ms. Gibbs was arrested for POCA and possession of marijuana. Mr. Lewis was arrested for carrying a pistol without a license, possession of an unregistered firearm, possession of unregistered ammunition, and operating a vehicle with a suspended license.
The trial court granted Mr. Lewis’s motion to suppress evidence of the gun, the ammunition, and the marijuana, concluding that the officers did not have reasonable, articulable suspicion to' search the vehicle for evidence of POCA. A division of this court concluded to the contrary that the officer’s had reasonable, articulable suspicion that there was evidence of POCA in the car. United States v. Nash, 100 A.3d 157, 164-65 (D.C.2014).[1] The division further concluded that the search of the car was lawful as incident to Ms. Gibbs’s arrest, even though the officers did not place Ms. Gibbs under arrest until after the search and it was not clear whether the officers had at the time of the search intended to arrest Ms. Gibbs. Id. at 165-68. The en banc court granted rehearing limited to the question whether the search *239 was lawful as incident to Ms. Gibbs’s arrest. United States v. Lewis, 107 A.3d 603 (D.C.2015) (en banc).
II.
When reviewing a trial court’s denial of a motion to suppress, we “view the evidence in the light most favorable to the prevailing party.” Bennett v. United States, 26 A.3d 745, 751 (D.C.2011) (internal quotation marks omitted). We draw all reasonable inferences in favor of upholding the trial court’s ruling. Milline v. United States, 856 A.2d 616, 618 (D.C.2004). We review the trial court’s legal conclusions de novo. United States v. Taylor, 49 A.3d 818, 819 (D.C.2012).
“A search conducted without a warrant is per se unreasonable under the Fourth Amendment unless it falls within a few specific and well-established exceptions.” Taylor, 49 A.3d at 821 (internal quotation marks omitted). Under one such exception, police officers may conduct a warrantless search of a vehicle, incident to an arrest, if they have reasonable, articula-ble suspicion to believe that the vehicle contains evidence of the offense of arrest. Arizona v. Gant, 556 U.S. 332, 351, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). The issue before this court en banc is whether such a search, which we will refer to as a Gant evidence search, is lawful if (a) the search precedes the arrest for the offense at issue; and (b) it is unclear whether the officers intended to arrest the suspect before conducting the search. Although the issue has not yet arisen with much frequency, as far as we are aware every court to have considered the issue has upheld the validity of such searches. See, e.g., State v. Fizovic, 770 S.E.2d 717, 720-22 (N.C.Ct.App.2015) (Gant evidence search of suspect’s car was lawful even though suspect was not arrested until after search and officer did not intend to arrest at time of search). The same issue has arisen in the context of other types of search incident to arrest, and the overwhelming weight of authority upholds the legality of such searches even when conducted before an arrest and in the absence of evidence that the officers subjectively intended to arrest the defendant at the time of the search. See, e.g., State v. J.J., 143 So.3d 1050, 1052 (Fla.Dist.Ct.App.2014) (per curiam) (upholding search as lawful incident to arrest where search preceded arrest and where officer explained search as based on officer safety; no indication that officer intended to arrest- at time of search); People v. Nguyen, 305 Mich.App. 740, 854 N.W.2d 223, 232-34 (2014) (police lawfully searched suspect’s person incident to arrest, even though search preceded arrest and officers did not believe they had probable cause to arrest at time of search), appeal denied, 497 Mich. 1035, 863 N.W.2d 327 (2015); State v. Sykes, 279 Wis.2d 742, 695 N.W.2d 277, 282-87 (2005); Moffitt v. State, 817 N.E.2d 239, 246 (Ind.Ct.App.2004); United States v. Anchondo, 156 F.3d 1043, 1045 (10th Cir.1998) (“In order to be a legitimate ‘search incident to arrest,’ the search need not take place after the arrest. A warrantless search preceding an arrest is a legitimate ‘search incident to arrest’ as long as (1) a legitimate basis for the arrest- existed before the search, and (2) the arrest followed shortly after the search. Whether or not the officer intended to actually arrest the defendant at the time of the search is immaterial to this two-part inquiry.”) (citations omitted). But see People v. Reid, 24 N.Y.3d 615, 2 N.Y.S.3d 409, 26 N.E.3d 237, 239-40 (2014) (search of suspect’s person was not lawful incident to arrest because, at time of search, suspect had not been arrested and officer had no intent to arrest suspect).
We hold that a Gant evidence search is lawful if (a) the police have prob *240 able cause to arrest the suspect for an offense; (b) the suspect recently occupied a vehicle; (c) the police have reasonable, ar-ticulable suspicion to believe that the vehicle contains evidence of the offense; (d) at the time of the search, the police have not released the suspect or issued the suspect a citation for the offense; and (e) the suspect’s formal arrest for the offense follows quickly on the heels of the search.[2]
A.
We turn first to whether a Gant evidence search may precede the arrest of the suspect. The Supreme Court did not decide that question in Gant. In Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), however, the Supreme Court addressed the same question in connection with the search of a defendant’s person incident to arrest, stating that “[w]here the formal arrest follow[s] quickly on the heels of the challenged search of [a suspect’s] person, we do not believe it particularly important that the search preceded the arrest rather. than vice versa.” 448 U.S. at 111, 100 S.Ct. 2556. Although Rawlings refers to both “formal arrest” and “arrest,” id. the lower courts, including this court, have consistently understood the rule announced in Rawlings to. apply without regard to any distinction between formal arrest and arrest; See, e.g., Millet v. United States, 977 A.2d 932, 935 (D.C.2009) (“A search incident to arrest may precede the actual arrest if probable cause exists, independent of the search, to justify the arrest,, and if the arrest follows quickly on the heels of the search.”) (internal quotation marks omitted); United States v. Powell, 376 U.S.App.D.C. 30, 32-33, 483 F.3d 836, 838-39 (2007) (en banc) (“where police had probable cause to arrest before search, it was of no import that the search came before the actual arrest”) (internal quotation marks omitted; citing cases).
’ The Supreme Court in Rawlings did not explain its reasons for holding that a search incident to arrest may permissibly precede arrest, but the lower courts have identified at least three. First, permitting search to precede arrest will in some cases benefit innocent suspects, because if the results of the search negate probable cause or persuade the officer not to arrest, the suspect will be spared the greater intrusion and collateral consequences of an arrest. See, e.g., State v. Overby, 590 N.W.2d. 703, 706 (N.D.1999) (“[I]f the person searched' is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested.’’) (internal quotation marks omitted). Second, in cases in which arrest is- inevitable, whether search precedes or follows arrest does not affect the degree of the intrusion on the suspect. Id. Third, courts are reluctant to micromanage the precise order in which officers who have probable cause to arrest conduct searches and arrests, particularly given the safety and other'tactical considerations that can be involved. See, e.g., Anderson v. State, 78 Md.App. 471, 553 A.2d 1296, 1301-02 (Md.Ct.Spec.App.1989).
Lower courts, including this court, have applied Rawlings broadly, upholding *241 searches that preceded arrest in cases involving Gant evidence searches, searches to protect officer safety or prevent destruction of evidence, searches of a suspect’s person, and searches of a vehicle. See, e.g., Powell, 376 U.S.App.D.C. at 33, 483 F.3d at 839 (upholding search of ear incident to arrest where suspect had not been arrested at time of search; “Indeed, every circuit that has considered the question-save one-has concluded that a search incident to arrest may precede the arrest.”) (citing cases); State v. Smith, 152 Idaho 115, 266 P.3d 1220, 1224 (Ct.App.2011) (upholding Gant evidence search of car where suspect had not been arrested at time of search); Adams v. State, 815 So.2d 578, 582 (Ala.2001) (upholding search of person incident to arrest where suspect had not been arrested at time of search but probable cause existed and arrest was “sufficiently contemporaneous”); Minnick v. United States, 607 A.2d 519, 525 n. 11 (D.C.1992) (search of purse taken from car lawful as search incident to arrest even though search preceded arrest; citing Raidings); cf., e.g., Waters v. United States, 311 A.2d 835, 836 (D.C.1973) (“It is well settled, however, that a. search or seizure may precede an arrest, provided the officer at that point already has probable cause to arrest the possessor of the items in question”).
Mr. Lewis does not appear to dispute that a Gant evidence search can be lawful even if the search is conducted before arrest, as long as an arrest is under way. Some of Mr. Lewis’s arguments, however, seem to imply more broadly that a completed arrest must precede a Gant evidence search. In any event, we hold that, as the Supreme Court concluded in Rawl-ings, it is sufficient that the arrest follows quickly after the search.
Most broadly, Mr. Lewis relies on the Supreme Court’s statements that “[i]t is the fact of the lawful arrest that establishes the authority to search” incident to arrest. E.g., United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). For several reasons, we do not understand this language to establish a rule that the arrest must precede a search incident to arrest. First, in the cases relied upon by Mr. Lewis the Supreme Court was not actually addressing the question whether a lawful search incident to arrest must follow the arrest. See, e.g., Robinson, 414 U.S. at 234-35, 94 S.Ct. 467 (holding that police may lawfully conduct full search of arrestee’s person incident to arrest, even in absence of case-specific basis for search). Both the Supreme Court and this court have cautioned against treating such language as a dispositive holding. See, e.g., United States v. Debruhl, 38 A.3d 293, 298 (D.C.2012) (“We have stressed, however, that stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question.”) (internal quotation marks omitted); Porter v. United States, 37 A.3d 251, 265 n. 20 (D.C.2012) (“Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.”) (quoting Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925)). Second, as previously noted, Mr. Lewis himself appears to concede that, despite the language upon which he relies, a completed arrest need not precede a search incident to arrest, as long as an arrest is under way. Third, interpreting that language to require an arrest to precede the search would contradict Rawlings.[3]
*242 On the last point, Mr-. Lewis argues that the Supreme Court’s statement in Rawl-ings is dictum. It is -true, as Mr, Lewis points, out, that the defendant in Rawlings did not argue in the Supreme Court that a lawful search incident to arrest must follow arrest. Brief and Reply Brief for Petitioner, Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), Nevertheless, the Supreme Court’s statement in Rawlings is now deeply entrenched in the law. It has been cited, and treated as a holding, in many lower-court decisions, including several decisions of this court. See, e.g., Minnick, 607 A.2d at 525 n. 11; United States v. Montgomery, 377 F.3d 582, 586 (6th Cir.2004) (“[A]s the Supreme Court held in [Rawlings], .the search-incident-to-a-lawful-arrest rule also permits an officer to conduct a full search of an arrestee’s person before he is placed under lawful custodial arrest as long as the formal arrest follows quickly on the heels of the challenged search of his person and the fruits of that search are not necessary to sustain probable cause to arrest him.”) (brackets, ellipses, and internal quotation marks omitted). We have located no case in which a court has treated the statement as dictum. Moreover, well before the decision in Rawlings, the courts in this jurisdiction had adopted the principle that “a search or seizure may precede an arrest, provided the officer at that point already has probable cause to arrest the possessor of the items in question.” Waters, 311 A.2d at 836 (citing Bailey v. United States, 128 U.S.App.D.C. 354, 357, 389 F.2d 305, 307 (1967)). Taken together, these considerations preclude this court from disregarding the principle announced by the Supreme Court in Rawlings. Cf., e.g., State v. Rose, 206 N.J. 141, 19 A.3d 985, 1012 n. 21 (2011) (“Without exploring the intricate distinctions between dictum and language necessary to decision, we conclude that we must recognize the clear, direct, explicit, and unqualified statement of the Supreme Court.”) (quoting Public Serv. Co. v. General Elec. Co., 315 F.2d 306, 310 n. 6 (10th Cir.1963)); Majette v. New London Hous. Auth., No. X094CV0450000090S, 2005 WL 3112738, *5 (Conn.Super.Ct. Nov. 3, 2005) (although plaintiff argued that language from decision of Connecticut Supreme Court was dictum, “the ‘dictum’ has become more or- less entrenched as black letter law”); Tony Andreski, Inc. v. Ski Brule, Inc., 190 Mich.App. 343, 475 N.W.2d 469, 473 (1991) (Griffin, J., concurring) (“While one could argue that the statements in [an earlier decision of the Michigan Supreme Court] were mere dicta, the doctrine is too firmly entrenched to be overruled by this intermediate appellate court.”).
Somewhat more narrowly, Mr. Lewis argues that the Supreme Court’s statement in Rawlings must be understood in context. Specifically, Mr. Lewis argues that an arrest was under way at the time of the search in Rawlings, and that Rawlings thus should not be read to authorize searches incident to arrest unless an arrest is at least under way. We conclude otherwise. Although it is not entirely clear what Mr. Lewis means by the term “under *243 way,” Mr. Lewis appeared to take the position at oral argument that an arrest is under way as long as, at the time of the search, the officers intend to transport the suspect to the police station for the purpose of charging the suspect with a crime, even if the officers have not communicated their intent in any way, On that view, the question whether an arrest was under way collapses into the question whether the officers subjectively intended to place the suspect under arrest. For reasons that we explain infra, however, we conclude that such an inquiry into officers’ subjective intent is foreclosed by controlling decisions of the Supreme Court.
Mr. Lewis also suggests in a footnote that the temporal flexibility provided by Rawlings should not be extended to Gant evidence searches. We disagree. As we have already noted, every court of which we are aware to have addressed the question has applied Rawlings to Gant evidence searches. See, e.g., Smith, 266 P.3d at 1224. Moreover, each of the justifications for the Rawlings rule applies to Gant evidence searches: permitting such searches to precede arrest in some instances will benefit suspects, because the results of the search may lead to release rather than the arrest that otherwise would have occurred; as to suspects who are going to be both searched and arrested, the order of those events does not affect, the degree of the intrusion; and tactical considerations may lead officers to reasonably prefer to conduct a Gant evidence search before completing an arrest.
In sum, we hold that a Gant evidence search can be lawful even if the search precedes arrest.
B.
We turn . next to the question whether the search in this case was lawful even though it is unclear whether, at the time of the search, the officers intended to arrest Ms. Gibbs. Based on -controlling Supreme Court authority, we conclude that the search was lawful.
The Supreme Court’s “Fourth Amendment cases have repeatedly rejected a subjective approach. Indeed, [the Supreme Court has] never held, outside limited contexts such as an inventory search or administrative inspection, that an officer’s motive invalidates objectively justifiable behavior under the Fourth Amendment.” Fernandez v. California, — U.S. -, 134 S.Ct. 1126, 1134, 188 L.Ed.2d 25 (2014) (citation, ellipses, and internal quotation marks omitted); see also, e.g., Ashcroft v. Al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2080-81, 2083, 179 L.Ed.2d 1149 (2011) (Supreme Court has “rejected every request to examine subjective intent” in Fourth Amendment setting, with exception of (a) special-needs searches, (b) administrative searches, and (c) searches conducted in absence of individualized suspicion); Brigham City v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (“An action is reasonable under the Fourth Amendment, regardless of the individual officer’s state of mind, as long as the circumstances viewed objectively, justify the action. ... The officer’s subjective motivation is irrelevant.”) (brackets, emphasis, and internal quotation marks omitted); Devenpeck v. Alford, 543 U.S. 146, 154, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (“As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. The Fourth Amendment’s concern with ‘reasonableness’ allows certain actions -to be taken in certain circumstances, whatever the subjective intent. Evenhanded law en *244 forcement is best achieved by the ápplication of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.”) (brackets, citations, and internal quotation marks omitted).
Gant evidence searches rest on particularized suspicion, because they require not only probable cause to arrest but also reasonable, articulable suspicion to believe, that the vehicle to be searched contains evidence of the offense of arrest. Gant, 556 U.S. at 351, 129 S.Ct. 1710. Under controlling Supreme Court law, the legality of such searches thus must be determined based on the objective circumstances, not on whether at the time of the search the officers subjectively intended to arrest the suspect. Cf. Peters v. New York, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968) (upholding search as lawful search incident to arrest; no direct evidence that officers subjectively intended to arrest suspect at time of search); id. at 68-69, 88 S.Ct. 1912 (Douglas, J., concurring); id. at 70, 88 S.Ct. 1889 (Fortas, J., concurring); id. at 79, 88 S.Ct. 1889 (Black J., concurring).
We are not persuaded by Mr. Lewis’s arguments to the contrary. First, Mr. Lewis argues that Gant evidence searches necessarily require inquiry into officers’ subjective intent, because the legality of such searches depends on the offense of arrest, which in turn depends on the subjective decision of a particular officer. The Supreme Court did not explain in Gant how courts should determine the offense of arrest for purposes of assessing the legality of a Gant evidence search. We need not delve into that issue in the present case, because Mr. Lewis does not dispute that there was a prompt arrest for POCA. We do note, however, that it is not clear that the inquiry must be subjective in character. Cf., e.g., Devenpeck, 543 U.S. at 154, 125 S.Ct. 588 (in determining whether there was probable cause to support arrest, courts are not limited to subjective grounds stated by officer). We thus do not understand Gant to have implicitly required a subjective inquiry into whether the-officers intend to arrest at the time they conduct a Gant evidence search.
Second, contrary to Mr. Lewis’s contention, Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), is consistent with an objective approach. In Knowles, a police officer stopped Mr. Knowles for speeding. 525 U.S. at 114, 119 S.Ct. 484. The officer issued Mr. Knowles a citation even though the officer could have arrested Mr. Knowles under Iowa law. Id. The officer then searched Mr. Knowles’s car, recovered a bag of marijuana and a pipe, arrested Mr. Knowles, and charged Mr. Knowles with drug offenses. Id. The Supreme Court ruled that the officer had conducted an illegal “search incident to citation” rather than a search incident to arrest. Id. at 116-19. Knowles turned on two objective circumstances. First, at the time of the search at issue, the suspect had been issued a citation rather than arrested. Second, “no further evidence of excessive speed was going to be found either on the person of the offender or in the offender’s car,” Id. at 118, 119 S.Ct. 484. The Knowles Court never mentioned the officer’s subjective intent and in no way suggested thát the- Court was adopting a novel exception to its general rule against consideration of subjective intent in determining the Fourth Amendment reasonableness of, searches based on particularized suspicion.
We recognize that, under an objective approach, officers who have probable cause to arrest for a minor crime for which they would not ordinarily make an arrest might be tempted to conduct a Gant evidence search and then decide, depending on the *245 results of the search, whether in fact to arrest. On the other Hand, under the approach advocated by Mr. Lewis, officers who want to conduct a Gant evidence search might be tempted to arrest suspects for petty crimes, when they would not otherwise have done so, in order to permit such a search. It thus is unclear that the approach advocated by Mr. Lewis would be more protective of suspects’ interests. In any event, the Supreme Court has held that comparable “concerns about improper motives and pretext do not justify subjective inquiries” in the context of searches and seizures resting on particularized suspicion. Al-Kidd, 131 S.Ct. at 2082. For example, the Court held in Al-Kidd that federal officials had lawfully detained terrorism suspects under the federal material-witness statute even if those officials did not intend to call the suspects as witnesses, as long as there was an objective basis for the detention. 131 S.Ct. at 2082-84. And in Brigham City, the Court held that officers may enter a home, the most protected area under the Fourth Amendment, if they have á reasonable belief that someone is in danger inside, even if the officers’ subjective intent is to gather evidence or arrest suspects rather than to provide aid. 547 U.S. at 405-06, 126 S.Ct. 1943.
In sum, we hold that the legality of a Gant evidence search does not depend on whether the officers intended to.arrest the suspect at the time of the search at issue.
C.
Mr. Lewis makes four additional arguments, which we address in turn. First, Mr. Lewis relies on the Supreme Court’s statements that “an incident search, may not precede an arrest and serve as- part of its justification.” Sibron v. New York, 392 U.S. 40, 63, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968). Under the approach we adopt, however, the search does not provide any part of the legal justification for the arrest. Rather, the arrest must be justified by preexisting probable cause.
Second, Mr. Lewis argues that a search cannot be incident to an arrest if the search is the causé of the arrest. See State v. Funkhouser, 140 Md.App. 696, 782 A.2d 387, 409 (Md.Ct.Spec.App.2001) (decision to arrest cannot be a “consequence of what was found:in the search”). The Supreme Court, however, has never suggested such a principle. Moreover,- such a principle would be inconsistent with the objective approach that the Supreme Court has required in contexts involving particularized suspicion.
Third, Mr. Lewis argues that, because a search must be justified at its inception, it is impermissible for subsequent events to affect the lawfulness of a search. It is true that, under the approach we adopt, the admissibility of evidence obtained during a' Gant evidénce search may depend on events that take place after the search. But that is not unique to the current setting. For'example, if officers executing á search warrant act within the warrant at first but then flagrantly exceed the scope of the warrant, all of the evidence seized may be subject to suppression. Cf., e.g., In re 650 Fifth Ave. & Related Props., 830 F.3d 66, 101 n. 32 (2d Cir.2016) (“[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search, unless it is shown that those executing the warrant acted in flagrant disregard of the warrant’s terms.”) (internal quotation marks omitted); State v. Rindfleisch, 359 Wis.2d 147, 857 N.W.2d 456, 465 (Wis.Ct.App.2014) (same). Thus, evidence, obtained during a course of conduct'that is lawful at its inception can become inadmissible based--on subsequent events. That is the *246 situation with Gant evidence searches. They are lawful at their inception if supported by probable cause to arrest and reasonable, articulable suspicion that evidence of. the. .offense of arrest is in the vehicle being searched, but the. evidence obtained in such searches may become inadmissible.based on subsequent events.
Finally, Mr. Lewis argues that his approach would give clearer guidance to law enforcement than the approach we adopt. We disagree. Mr. Lewis’s approach raises many questions. At the most basic level, it is unclear when an arrest should be viewed as under way or what it would mean to require that the officers intend to arrest the suspect. On the latter topic, for example, it is unclear whether under Mr. Lewis’s approach a Gant evidence search would be .lawful if the police plan to transport the. suspect to the station to then be released on citation. See generally D.C. Code § 23-584 (b) (2016 Cum. Supp.) (authorizing certain officials to grant citation release to arrestees after appearance at law-enforcement agency). To take another example relating to a separate topic, it is unclear how Mr. Lewis’s approach would be applied if different officers on the scene had different intents. In light of these and other similar questions, we conclude that Mr. Lewis’s approach would not provide a significantly clearer framework for police than the objective approach that we adopt.
III.
A.
A central theme of the dissent is that permitting a search incident to arrest to precede formal arrest would contradict “the traditional requirement of a completed formal arrest to justify a search.” Post at 265. The Supreme Court, however, has held that the search-incident-to-arrest exception contains no such requirement. Rawlings, 448 U.S. at 111, 100 S.Ct. 2556 (“Where the formal arrest follow[s] quickly on the heels of the challenged search of [a suspect’s] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.”). Notwithstanding the dissent’s reservations about Rawlings, we are bound by Rawlings’s, holding. See generally, e.g., Mercer v. United States, 864 A.2d 110, 114 n. 4 (D.C.2004).
• As part of its implicit critique of Rawl-ings, the dissent states that the “search-ineident-to-arrest exception that existed at common law” was limited to instances in which formal arrest preceded the search. Post at 256. That does not appear to be the case. The dissent cites no common-law authority holding or explicitly stating that a lawful search incident to arrest cannot precede the formal arrest. Id. The Supreme Court has pointed out that the historical underpinnings of the search-incident-to-arrest doctrine are “sparse.” United States v. Robinson, 414 U.S. 218, 230, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). But the Court in Rawlings relied on a number of decisions holding that a search incident to arrest can lawfully precede the arrest. Rawlings, 448 U.S. at 111, 100 S.Ct. 2556 (citing, e.g., United States v. Brown, 150 U.S.App.D.C. 113, 114-15, 463 F.2d 949, 950-51 (1972) (per curiam) (approving search incident to arrest where officer, who hád probable cause to believe defendant was in possession of narcotics, introduced himself and then searched defendant; no indication officer had seized defendant before search or intended to arrest defendant before search; “Even though a suspect has not formally been placed under arrest, a search of his person can be justified as incident to an arrest if an arrest is made immediately after the search, and if, at the time of the search, there was probable cause to arrest.”)). Although one can also *247 find contrary decisions, the line of authority on which Rawlings relied reaches back nearly a hundred years. See, e.g., United States v. Gorman, 355 F.2d 151, 160 (2d Cir.1965) (Friendly, J.) (dicta) (“We do not understand just what values would be served by a rule that would force the police to impose a justifiable restraint on the person as a condition to making a search which, if fruitless, might cause them to decide against it; on the other hand, if the search does lead them to make an arrest for which reasonable cause previously existed, the search would seem ‘incident to arrest,’ in any normal use of language, and the dilemma of seeking to justify the arrest by the search and at the same time to justify the search by the arrest is obviously not presented.”) (citations and internal quotation marks omitted); People v. Simon, 45 Cal.2d 645, 290 P.2d 531, 533 (1955) (Traynor, J.) (in case where officer stopped defendant, searched defendant, found marijuana, and arrested defendant, court concluded that “search [was] not unlawful merely because it precede[d] rather than follow[ed] the arrest”); State v. McDaniel, 115 Or. 187, 237 P. 373, 376 (1925) (“It is urged that the arrest followed, and did not precede, the search. In our opinion it is immaterial whether the arrest preceded or followed the search, if such acts were practically simultaneous, and if, in fact, the defendant was guilty of committing a crime in the presence of the officers for which he might have been arrested. In many instances it is dangerous for an officer to go through the formality of stating that the- accused is under arrest, and the law does not require him to do so. It is oftentimes safer to act first and talk afterward.”).
The dissent also attempts to marginalize Rawlings by describing Rawlings as presenting “rare circumstances” or “unusual facts.” Post at 258 & notes 5-6, 261. To the contrary, the issue presented in Rawlings arises with great frequency. Many published appellate decisions apply Rawlings to uphold searches conducted incident to, but before, arrest. See supra at 240-41. Although the dissent could be read to suggest- that Gant indicated that lawful searches incident to arrest that precede formal arrest will be “rare,” post at 258 note 6, in fact, Gant used the word “rare” to describe one particular type of search incident to arrest; a justifiable search of a vehicle, to protect officer safety, occurring before an officer can adequately secure the suspect. 556 U.S. at 343 n. 4, 129 S.Ct. 1710. Nothing in Gant suggests that it would be unusual for lawful searches incident to arrest generally, or Gant evidence searches specifically, to precede formal arrest.
B.
Although the dissent somewhat tentatively suggests that Rawlings is inapplicable to Gant evidence searches, post at 260, the dissent ultimately concludes more narrowly that, at a minimum, an arrest must be under way for a Gant evidence search to be lawful. Post at '258-60. We disagree.
‘ The dissent correctly notes that Justice Scalia’s concurrence in Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), spoke in terms of searches incident to arrests that had already occurred. Post at 255-57. According to the dissent, this language reflects a considered judgment that evidentiary searches incident to arrest should be limited in conformity with the common-law rule that formal arrest must precede a search incident to arrest. Id. Moreover, the dissent reasons, the Supreme Court in Gant adopted.the reasoning of Justice Scalia’s concurrence in Thornton. Id. Therefore, *248 the dissent suggests,' Gant should be understood as implicitly precluding Gant evidence searches that precede formal arrest. Id. Our analysis differs from that of the dissent in a number of respects.
First, as we have already noted, supra at 246-47, there does not appear to have been a settled common-law rule that the formal arrest must precede a search incident to arrest. Second, the defendant in Thornton had been placed under formal arrest before the search at issue. 541 U.S. at 618, 124 S.Ct. 2127. Justice Scalia thus had no occasion to address whether evidence searches incident to arrest may, in conformity with Rawlings, precede the formal arrest. Although Justice Scalia. expressed his conclusion in terms reflecting the circumstances of Thornton, that cannot reasonably be understood to reflect a considered intent to implicitly carve out an exception to Rawlings. The dissent itself recognizes the applicable general principle. Post at 259-60 (quoting Armour & Co. v. Wantock, 323 U.S. 126, 132-33, 65 S.Ct. 165, 89 L.Ed. 118 (1944) (“It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes ' writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading.”)). Third, Gant does not itself impose a requirement that Gant evidence searches must follow the formal arrest. In Gant too the defendant had been formally arrested before the search at issue, 556 U.S. at 336, 129 S.Ct. 1710, so the Court had no occasion to consider the applicability of Rawlings. But the Supreme Court’s language in Gant suggests that the Court in Gant understood and intended that Rawlings would continue to permit searches incident to arrest to be conducted before the formal arrest. For example, in explaining the basis for Gant evidence searches, the Court states that in some cases “the offense of arrest”—not, as the dissent would have it, the fact of arrest—“will supply a basis for searching the passenger compartment of an arrestee’s vehicle and any containers therein.” Gant, 556 U.S. at 344, 129 S.Ct. 1710; see also id. at 335, 129 S.Ct. 1710 (“[C]ircumstances unique to the automobile context justify a search incident- to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.”); id. at 343, 129 S.Ct. 1710 & n. 4 (indicating that searches incident to arrest for safety purposes may be conducted before officers “fully effectuate an arrest”). Fourth, we are doubtful that as a lower court we could appropriately infer that Gant implicitly intended to carve out an exception to the holding of Rawl-ings that searches incident to arrest may precede the formal arrest. See, e.g., Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (rejecting proposition “that other courts should ever conclude that [the Supreme Court’s] more recent cases have, by implication, overruled an earlier precedent”). Fifth, as we have already noted, supra at 239, every court of which we are aware to have decided the issue has held that Rawlings applies to Gant evidence searches.
In light of the foregoing considerations, it is not surprising that the dissent itself does not appear to rest on the idea that Gant implicitly carved out an exception to Rawlings. Rather, the dissent primarily takes the view that at a minimum an arrest must be under way before a Gant evidence search may lawfully be conducted. Post at 258-60. That view. does not withstand analysis.
First, the Supreme Court in Rawlings suggested no such limitation. To the contrary, the Court stated its holding more *249 broadly: it suffices if “formal arrest follow[s] quickly on the heels of the challenged search.” 448 U.S. at 111, 100 S.Ct. 2556. Second, the overwhelming weight of authority interprets Rawlings to permit searches incident to arrest to precede the formal arrest, without any indication that arrest must in some sense be under way at the time of search. Supra at 239-40, 240-41, 242; see also, e.g., Brown, 150 U.S.App.D.C. at 114-15, 463 F.2d at 950-51 (approving search incident to arrest where officer, who had probable cause to believe defendant was in possession of narcotics, introduced himself and then searched defendant; no indication officer had seized defendant before search or intended to arrest defendant before search). In contrast, there is virtually no support in the case law for the dissent’s novel limitation on Rawlings. Third, the concept of an arrest being “under way” is remarkably opaque. As previously noted, supra at 242-43, counsel for Mr. Lewis indicated at oral argument that an arrest is under way as long as the officers subjectively intend to make an arrest. On that view, the term “under way” is simply another way of requiring a subjective intent to arrest. The dissent does not explain whether' it agrees with Mr. Lewis that subjective intent to arrest suffices, or whether instead the dissent believes that officers must take some unspecified action objectively manifesting their intent to arrest before an arrest will be deemed under way. Post at 258-59. Given these fundamental uncertainties, we are not persuaded by the dissent’s vague assurance that the term “under way” is not ambiguous. Id. at 259. Relatedly, it is difficult to understand the dissent’s assertion that Ms. Gibbs’s arrest in this case was “not under way—under any definition of the term—when the police searched Mr. Lewis’s car,” Id. at 260. To the contrary, at the time of the search, Ms. Gibbs had been seized, the police had probable cause to arrest her, and she was arrested promptly after the search. Her arrest thus can be understood to have been “under way” in an ordinary sense of the term. Merriam-Webster’s Collegiate Dictionary 1364 (11th ed. 2012) (defining “under way,” inter alia, as “in progress” or “afoot”). Finally, the dissent’s conclusion that an arrest was not under way in this case necessarily rests on the view that a Gant evidence search is unlawful unless the police subjectively intend to arrest the defendant at the time of the search. As we have already explained, supra at 243-45, controlling Supreme Court authority forecloses such an approach. The search of the car in this case was based on particularized suspicion that the car contained evidence of a crime. The Supreme Court has repeatedly and unequivocally held that such searches may not be invalidated on the basis of officers’ subjective intent. Id. at 243-44 (citing cases). The dissent’s response to this controlling authority is to suggest that there may . be an exception permitting consideration of subjective intent where “the government, wishes to deviate from objective, existing warrant exceptions.” Post at 265. For the reasons already- stated, this case does not involve a “deviation] from objective, existing warrant exceptions.” In any event, the Supreme Court could not- have been clearer: searches based on particularized suspicion may not be invalidated based on the officer’s subjective intent. Given our obligation to follow the holdings of the Supreme Court, we see no room for the dissent’s approach.
C.
According to the dissent, upholding the legality of the search in this case will “eviscerate[ ] the limits” imposed in Gant on searches incident to arrest, will permit “rummaging at will” during searches “un *250 tethered in every respect from an actual arrest,” “asks almost nothing of police officers before they conduct a search of a car incident to arrest,” and “invites” discriminatory law enforcement. Post at 255, 252-53 (brackets omitted), 262, 264. These would be very serious objections if they were well founded, but they are not well founded.
The Supreme Court in Gant precluded a particular type of search incident to arrest: searches justified neither by a need to protect officer safety nor by a particularized reason to believe that there would be evidence of crime in the area searched. E.g., 556 U.S. at 344, 129 S.Ct. 1710 (“Neither the possibility of access [to a weapon] nor the likelihood of discovering offense-related evidence authorized the search in this case.”). The search in the present case differs critically from the type of search precluded in Gant, because the search of the car in the present case rested on particularized reason to believe that the car contained evidence of the POCA offense. Upholding the legality of the search in the present case in no way undermines Gant’s rejection of suspicionless searches. For the same reason, upholding the search in this case will not permit officers to “rummag[e] at will.” Post at 252-53. The Supreme Court used the term “rummage” in Gant to refer to searches not based on particularized suspicion. Id. at 345, 129 S.Ct. 1710 (permitting search “when there is no basis for believing evidence of the offense might be found in the vehicle” “implicates the central concern underlying the Fourth Amendment—the concern about, giving police officers unbridled discretion to rummage at will among a person’s private effects”); see also, e.g., Merriam-Webster’s Collegiate Dictionary 1089 (11th ed. 2012) (defining “rummage,” inter alia, as “to engage in an undirected or haphazard search”). Because it was based on reason to believe that the car contained evidence of POCA, the search in this case cannot reasonably be described as involving “rummaging at will.” Post at 252-53 (brackets omitted).
The search in this case occurred after Ms. Gibbs had been seized and at a time when the police had probable cause to arrest Ms. Gibbs for POCA. The search rested on particularized reason to believe that the car would contain evidence of POCA. After the search, Ms. Gibbs was promptly arrested for POCA. Far from being “untethered in every respect from an actual arrest,” post at 252, the search was very closely tethered to Ms. Gibbs’s arrest. And far from “askfing] almost nothing of police officers before they conduct a search of a car incident to arrest,” post at 262, Gant evidence searches, as we understand them, require both probable cause to arrest for an offense and particularized reason to believe that the vehicle that is searched will contain evidence of that offense.
We turn finally to the dissent’s view that upholding the legality of the search in this case will invite discriminatory law enforcement. Post at 263-64. As previously noted, many courts have upheld searches incident to arrest where the search preceded the formal arrest and where officers were not shown to have intended to arrest at the time of the search. Supra at 239-40. Nevertheless, the dissent has pointed to no evidence that such rulings have contributed to abusive or discriminatory law enforcement. Although the dissent cites materials describing discriminatory law-enforcement tactics, including the use of racial profiling and “baseless[]” stops, post at 263-64 note 14, the dissent does not identify any material linking those problems to the particular issue in this case.
We share the dissent’s more general concerns about discriminatory law enforcement. Post at 263-64. But the dissent fails *251 to explain how the approach it favors would materially reduce the incentive to conduct searches of suspects whom officers would otherwise not be inclined to arrest. It is true, as the dissent states, that “arrests consume law enforcement resources.” Post at 262. Because it is unclear what steps the dissent would require officers to take before searches would be permitted, supra at 250, it is unclear what practical consequences the dissent’s approach would have. In any event, officers who wanted to conduct searches might well decide to devote the necessary additional resources. As we and other courts have noted, supra at 240-41, 248, the approach advocated by the dissent might well be worse for suspects in some circumstances than an approach that permits searches that precede formal arrest. In any event, whatever the possible policy implications of the various approaches, we conclude that binding Supreme Court doctrine precludes the approach advocated by the dissent.
In sum, the dissent in our view rests on a novel and vague limitation of the Supreme Court’s holdings in Rawlings and Gant. Moreover, the dissent’s approach is incompatible with the Supreme Court’s repeated holdings that searches based on particularized suspicion may not be invalidated based on officers’ subjective motivar tion or intent. We therefore respectfully disagree with the dissent.
IV.
To reiterate, we hold that, under the applicable Supreme Court decisions, a Gant evidence search is lawful if (a) the police have probable cause to arrest the suspect for an offense, Maryland v. King, - U.S. -, 133 S.Ct. 1958, 1970, 186 L.Ed.2d 1 (2013) (“[PJrobable cause provides legal justification for arresting [a suspect], and for a brief period of detention to take the administrative steps incident to arrest. ... The validity of the search of a person incident to a lawful arrest [is settled].”) (internal quotation marks omitted); (b) the suspect recently occupied a vehicle, Gant, 556 U.S. at 343, 129 S.Ct. 1710; (c) the police have reasonable, articulable suspicion to believe that the vehicle contains evidence of the offense, id.; (d) at the time of the search, the police have not released the suspect or issued the suspect a citation for the offense, Knowles, 525 U.S. at 118-19, 119 S.Ct. 484; and (e) the suspect’s formal arrest for the offense follows quickly on the heels of the search, Rawlings, 448 U.S. at 111, 100 S.Ct. 2556.
In this case, Mr. Lewis does not dispute that the police had probable cause to arrest Ms. Gibbs for POCA. Ms. Gibbs was a recent occupant of the car. The division has already ruled that the police had reasonable, articulable suspicion to believe that the car contained evidence of POCA, and the en banc court left that ruling undisturbed. Nash, 100 A.3d at 164-65; Lewis, 107 A.3d at 603. Ms. Gibbs had not been released or issued a citation at the time of the search. Finally, Mr. Lewis does not dispute that officers made a prompt formal arrest of Ms. Gibbs for POCA. We therefore reverse the trial court’s order of suppression and remand for further proceedings.

So ordered.

. Before the division, Mr. Lewis’s case was consolidated with a factually unrelated case, " United States v. Nash, No. 13-CO-1299. United States v. Nash, 100 A.3d at 159-60. The division affirmed tire trial court’s suppression order in Mr. Nash’s case. Id. at 162-64. The current proceeding before the en banc court involves only Mr. Lewis’s case.

. By upholding the legality of Gant evidence searches in the circumstances stated in text, we do not mean to imply that all other Gant evidence searches would necessarily be unlawful. For example, we express no view on the question whether an otherwise lawful Gant evidence search would be rendered unlawful if the suspect fled from the police after the search and before the police placed the suspect under arrest. On a separate point, the dissent asserts that we decide the case on a basis “which neither party meaningfully briefed." To the contrary, the parties extensively briefed the issues we decide.

. For similar reasons, we are unpersuaded by Mr, Lewis’s reliance on language in Justice Scalia’s concurring opinion in Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, *242 158 L.Ed.2d 905 (2004), stating that permitting searches for evidence incident to arrest is justified because the "fact of prior lawful arrest” distinguishes arrestees from society at large and distinguishes searches for evidence of the crime of arrest from general rummaging. 541 U.S. at 630, 124 S.Ct. 2127. Moreover, although the opinion for the Court in Gant did adopt the general approach advocated by Justice Scalia in his concurring opinion in Thornton, see Gant, 556 U.S. at 343-44, 129 S.Ct. 1710, the opinion for the Court in Gant did not use the word "prior” in stating its holding. Id. On that point, we take our guidance from the opinion for the Court in Gant rather than the concurrence in Thornton.